No. 105,228

STATE OF KANSAS, *Appellee*, v. ELDIER MOLINA, *Appellant*.

(325 P.3d 1142)

Opinion filed May 30, 2014.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Edmond D. Brancart*, chief deputy district attorney, argued the cause, and *Jennifer L. Myers*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

MORITZ, J.: A jury convicted Eldier Molina of two counts of first-degree premeditated murder and one count of criminal possession of a firearm. The district court sentenced Molina to life in prison with no possibility of parole for 50 years (hard 50) on the first murder conviction, a consecutive life sentence with no possibility of parole for 25 years (hard 25) on the second murder conviction, and a concurrent 8-month prison sentence for the firearm conviction.

In this direct appeal, Molina seeks reversal of his convictions, arguing the district court clearly erred in failing to give an unrequested limiting instruction for other crimes evidence and an unrequested instruction on voluntary manslaughter as a lesser included offense of first-degree murder. We reject both claims and affirm Molina's convictions.

Molina also asserts several sentencing claims, including that his hard 50 sentence is unconstitutional in light of *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013); the district court violated his right to be free from double jeopardy by relying on the same aggravating factor to impose a hard 50 sentence and consecutive life sentences; and the district court erred in imposing lifetime postrelease supervision for his off-grid convictions.

Consistent with our recent decision in *State v. Soto*, 299 Kan. 102, 322 P.3d 334 (2014), we conclude the district court's imposition of a hard 50 sentence violated Molina's right to a jury trial under the Sixth Amendment to the United States Constitution. Consequently, we vacate his hard 50 sentence, including the unauthorized period of lifetime postrelease supervision, and remand for resentencing. To provide guidance on remand, we address and reject Molina's double jeopardy claim. Finally, while we affirm Molina's remaining sentences, we vacate the unauthorized lifetime postrelease supervision portion of Molina's hard 25 sentence.

## FACTUAL AND PROCEDURAL HISTORY

On November 13, 2009, as Kansas City, Kansas, police officers Jason Pittman and Darrell Forrest conducted surveillance at a potential drug house, Pittman saw a car arrive at the house, remain a few minutes, and leave. Pittman and Forrest followed the car and pulled behind it at a stoplight at the intersection of 18th and Central. As Pittman waited at the traffic light, he looked to the west and saw a silver Honda pull up alongside a black sedan. Pittman thought this was odd because the Honda appeared to be in the wrong lane. Then Pittman and Forrest both heard several gunshots, and Pittman saw a muzzle flash coming from the Honda's front passenger seat.

Pittman activated the patrol car's sirens and emergency lights and drove around the car he had been following. Pittman and Forrest watched as the Honda passed through the intersection traveling eastbound on Central Avenue. As it did so, both officers saw the driver look toward the patrol car, and Pittman got a good look at the driver's face. Pittman testified he knew the driver saw him because he could read the driver's lips as the driver said, " 'Oh, shit.' " The Honda drove through a store parking lot and then south on 18th Street as Pittman, Forrest, and eventually other officers pursued it.

Ultimately, the Honda drove through an open field near the Kansas National Guard Armory and came to a rest at a dead end street. Several officers saw two individuals get out of the Honda and run into a nearby wooded area. Officers immediately arrested a third individual who got out of the backseat, 12-year-old Max Palomino.

As officers searched the wooded area for the two other suspects, they called in a K-9 unit to assist in the search. The tracking dog picked up a scent and led officers through the wooded area to a house where they found Molina hiding underneath a deck. The second individual was not found.

Other officers investigated the crime scene at 18th and Central and found two nonresponsive male victims in the front seat of the black sedan. Emergency technicians transported the victims,

brothers Gerson Diaz-Turcios and Jos Diaz-Turcios, to separate medical facilities, where both men died from gunshot wounds to the head.

After his arrest, Palomino identified the two men who ran from the Honda as Molina and Juan Lopez. Officer Pittman reviewed photographs of known gang members and identified Lopez as the driver of the Honda.

The State jointly charged Molina and Lopez with two counts of first-degree premeditated murder. The State also charged Molina with one count of criminal possession of a firearm and Lopez with one count of fleeing or eluding a police officer. At the close of their joint trial, the jury found both Molina and Lopez guilty as charged. See *State v. Lopez*, 299 Kan. 324, 323 P.3d 1260 (2014) (considering direct appeal of Molina's codefendant, Juan Lopez).

The State sought a hard 50 sentence against Molina based on his knowing or purposeful killing of more than one person during the shooting. See K.S.A. 21-4636(b) (listing an aggravating circumstance supporting imposition of hard 50 sentence as "the defendant knowingly or purposely killed . . . more than one person"). Following an evidentiary hearing, the district court concluded the jury's findings of guilt on two first-degree premeditated murder charges clearly proved the aggravating circumstance and concluded the mitigating circumstances urged by Molina, including his relatively young age and that the shooting arose out of gang mentality, did not outweigh the aggravating circumstance. See K.S.A. 21-4635(d) (stating findings necessary to impose hard 50 sentence). Based on these findings, the district court sentenced Molina to life in prison with no possibility of parole for 50 years on the first murder conviction, a consecutive sentence of life with no possibility of parole for 25 years on the second murder conviction, and a concurrent 8-month prison sentence for the firearm conviction.

Our jurisdiction over Molina's direct appeal arises under K.S.A. 22-3601(b)(1) (maximum life sentence).

## DISCUSSION

*The district court did not clearly err in failing to give an unrequested limiting instruction for other crimes evidence.*

Molina seeks reversal of his convictions and remand for a new trial, arguing the district court erroneously failed to give the jury an unrequested limiting instruction for other crimes evidence. Further, Molina reasons a properly instructed jury would have returned a different verdict.

*Standard of Review/Analytical Framework*

We review the failure to give an unrequested jury instruction for clear error. K.S.A. 22-3414(3); *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012). Applying a clear error analysis, we first consider whether the district court erred in omitting the instruction. This presents a legal question subject to unlimited review. Next, if we find error, we consider reversibility. Reversal is required only if we are firmly convinced the jury would have returned a different verdict had the instruction been given. The reversibility inquiry requires a review of the entire record and is subject to unlimited review. The defendant bears the burden to establish clear error. 295 Kan. at 515-16.

*Analysis*

To determine if the district court erred in failing to give the instruction, we first consider whether a limiting instruction for other crimes evidence would have been legally and factually appropriate. See 295 Kan. at 515-16. The admission of other crimes evidence is governed by K.S.A. 2009 Supp. 60-455, which provides in relevant part:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

"[T]his court has held that a trial court is to instruct the jury on the specific purpose for admission 'whenever 60-455 evidence comes in.' " *State v. Breeden*, 297 Kan. 567, 581, 304 P.3d 660

(2013) (quoting *State v. Reid,* 286 Kan. 494, 503, 186 P.3d 713 [2008]). Thus, a limiting instruction is both legally and factually appropriate if any 60-455 evidence is presented at trial.

Here, Molina argues the admission of three distinct pieces of other crimes evidence required the district court to give a limiting instruction: (1) evidence Molina's status as a gang member required him "to engage in certain crimes," namely fighting with or shooting rival gang members, (2) evidence that the Honda driven by Lopez was stolen, and (3) evidence that at the time of his arrest, Molina possessed and intended to sell marijuana.

Regarding the gang-related evidence, the State counters the district court was not required to give a limiting instruction because K.S.A. 2009 Supp. 60-455 does not govern the admission of such evidence. Regarding the stolen car and drug crimes evidence, the State assumes K.S.A. 2009 Supp. 60-455 applies but argues Molina waived any protection he might have had under K.S.A. 2009 Supp. 60-455 because both Molina and Lopez either introduced or emphasized that evidence to support their theories of defense at the joint trial. Alternatively, the State argues that even if we find error in the failure to give a limiting instruction, reversal is not required in light of the overwhelming evidence of Molina's guilt.

### 1. *Gang-related evidence*

We have consistently held evidence of gang affiliation or membership is not K.S.A. 2009 Supp. 60-455 evidence. See *State v. Jones,* 295 Kan. 804, 809-10, 286 P.3d 562 (2012) (citing several cases). Rather, gang evidence is generally admissible if relevant, unless under K.S.A. 60-445 its probative value " 'is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.' " 295 Kan. at 809. Further, we have clarified that a trial court is not required to give a limiting instruction regarding gang evidence absent either a request for such an instruction or an objection for the failure to give it. See *State v. Conway,* 284 Kan 37, 50, 159 P.3d 917 (2007).

Relying on this precedent, the State argues K.S.A. 2009 Supp. 60-455 does not apply to the gang-related evidence admitted at

Molina's trial so the district court did not err in failing to give an unrequested limiting instruction. Molina acknowledges this precedent but urges us to draw a distinction between evidence of gang membership or affiliation and evidence of a gang's criminal activities. He argues K.S.A. 2009 Supp. 60-455, rather than K.S.A. 60-445, governs the admission of evidence "relating to a gang's illegal activities" and, because the State presented such evidence at trial, the trial court should have given a limiting instruction. Specifically, Molina points to evidence that he was a member of the Surenos Por Vida (SPV) gang and Palomino's testimony explaining that SPV gang members were expected to fight with or shoot members of a rival gang, the Florencia (F13s).

Molina argues *State v. Goodson*, 281 Kan. 913, 135 P.3d 1116 (2006), supports the distinction he makes between evidence of gang membership or affiliation and evidence of a gang's criminal activities. See 281 Kan. 914, Syl. ¶ 11 ("Although evidence of membership in a gang is not a civil wrong and not subject to the rule of exclusion under K.S.A. 60-455, evidence that the gang committed illegal acts may violate the prohibition on the introduction of prior crimes evidence codified at K.S.A. 60-455.").

In *Goodson*, this court found no error in the admission of gang affiliation evidence but concluded, in part, the district court erred in admitting evidence Goodson's gang " '[s]ometimes' " committed illegal acts. 281 Kan. at 921, 925. The *Goodson* court reasoned that although evidence of gang membership is not a crime or civil wrong subject to the exclusionary rule of K.S.A. 60-455, other gang-related evidence may violate that statute:

"In this case, however, the State went beyond asking about membership in gangs and asked [the witness] whether the L.L.C. committed illegal acts. This question was not relevant to prove any material fact except propensity or bad character; no attempt was made to tie the evidence to any basis for admission permitted by K.S.A. 60-455. The admission of the evidence was a flagrant violation of the prohibition on the introduction of prior crimes evidence codified at K.S.A. 60-455." 281 Kan. at 925.

Although neither party challenges *Goodson*'s viability, we now question *Goodson*'s conclusion the State flagrantly violated K.S.A. 60-455's prohibition on the introduction of other crimes evidence

in light of the plain language of the statute and the facts before the *Goodson* court. K.S.A. 2009 Supp. 60-455 specifically limits application of subsection (a) "to situations involving 'evidence that *a person* committed a crime or civil wrong *on a specified occasion*' to infer *a person* has the disposition or propensity to 'commit[] another crime or civil wrong *on another specified occasion.*'" (Emphasis added.) *Breeden*, 297 Kan. at 577. Thus, it would seem that evidence that Goodson's gang "sometimes" committed illegal acts is outside K.S.A. 2009 Supp. 60-455's prohibitions. Similarly, in this case, evidence of Molina's membership in the SPV and the expectation that SPV gang members fight with or shoot F13 gang members is outside K.S.A. 2009 Supp. 60-455 because it is not evidence that a particular person committed a particular bad act on a particular occasion.

Thus, even if *Goodson's* broader proposition is correct—*i.e.*, that some gang-related evidence falls under K.S.A. 2009 Supp. 60-455's umbrella—the evidence presented in this case does not. Consequently, we conclude the district court did not err in failing to provide an unrequested limiting instruction for the gang-related evidence.

### 2. *Possession of a stolen car*

At trial, Palomino briefly mentioned that the Honda involved in the shooting was stolen. Lopez' counsel later attempted to elicit additional testimony from Detective Mike Lucas to explain how Lopez and Molina came to possess the Honda. During a bench conference on the appropriateness of such questioning, Molina's counsel offered his suggestions as to the questions Lopez' counsel could ask about the stolen car.

The trial court recessed, dismissed the jury, and continued conferring with counsel. The court noted evidence had been admitted indicating the car was stolen but neither party had sought a limiting instruction or objected to that evidence on K.S.A. 2009 Supp. 60-455 grounds. Further, the trial court characterized Palomino's reference to the stolen car as "slight" and *sua sponte* concluded no cautionary instruction was required. Ultimately, the court permitted Lopez' counsel to question Detective Lucas about his investi-

gation of the stolen car, and Lucas testified he was aware the Honda was reported stolen 2 days before the shooting.

On direct examination, Molina denied involvement in the shooting and denied stealing the Honda or ever being in the Honda. During closing arguments, counsel for both defendants referred to the stolen Honda and emphasized that neither of the defendant's fingerprints were found inside the Honda.

Notably, Molina's counsel never requested a limiting instruction as to evidence the Honda was stolen. On appeal, however, he contends the trial court erred in failing to limit the jury's consideration of that evidence.

We need not determine whether this evidence falls within K.S.A. 2009 Supp. 60-455's penumbra because the State does fail to argue the stolen car evidence is not subject to that statute. Instead, the State contends Molina waived any right to a limiting instruction by introducing, emphasizing, or relying upon the stolen car evidence to support his defense. But a defendant's reliance on K.S.A. 2009 Supp. 60-455 evidence and failure to request an instruction is more relevant to the question of reversibility than error. See, *e.g.*, *State v. Gunby*, 282 Kan. 39, 57-58, 144 P.3d 647 (2006) (suggesting prior cases discussing waiver in context of omitted limiting instructions support conclusion that errors in omitting limiting instruction for K.S.A. 60-455 evidence are subject to review for harmless error rather than automatic reversal).

Assuming an instruction should have been given, we are firmly convinced the jury would not have returned a different verdict absent its omission. Two officers witnessed the shooting, and several officers pursued the Honda from the scene of the shooting to the wooded area where Molina and Lopez fled and Palomino was arrested. Aided by a K-9 unit, officers tracked Molina's trail from the Honda, through the wooded area, and to a house where officers found Molina hiding under a deck. At trial, Palomino identified Lopez as the driver of the Honda and Molina as the shooter. On this record, Molina has not met his burden to establish clear error.

### 3. *Possession of marijuana with intent to sell*

During opening statements Molina's counsel advised the jury Molina's girlfriend would testify

"that [Molina] left to sell some marijuana, that that's what he did to raise a little money every now and then. He would sell marijuana. Keep that fact in mind with this. When he was finally located, and he was, by the dog, inside of his pockets he had five individually wrapped bags of marijuana."

Molina's counsel further explained that the evidence would show Molina ran and hid from police because "[h]e had five bags of marijuana that he's not supposed to have."

As Molina's counsel promised, the jury heard evidence of Molina's possession of marijuana with intent to sell. Specifically, the jury heard testimony from an officer who found five bags of marijuana on Molina after his arrest. Further, the jury learned from Molina that when he heard the police sirens, he was preparing to sell a bag of marijuana at a gas station so he ran and hid underneath a deck to avoid police. Additionally, Molina's girlfriend testified Molina left her house on the night of the shooting to sell marijuana at a gas station. Molina also attempted to elicit testimony that the dog that led officers to Molina's hiding place merely picked up the scent of marijuana rather than tracking Molina from the stolen Honda. Finally, in closing argument, Molina's counsel argued that the most credible trial evidence demonstrated Molina left his house on the night of the shooting to sell marijuana and hid from police because he possessed marijuana.

As with the stolen car evidence, we need not decide whether K.S.A. 2009 Supp. 60-455 applies to the drug crime evidence because the State again presumes its application and argues Molina waived entitlement to a prophylactic limiting instruction by introducing the evidence as part of his defense. Although evidence of Molina's drug possession and his intent to sell came in through the defense, the need for a limiting instruction on other crimes evidence does not depend upon which party introduces the evidence. Instead, as we held in *Breeden*, "a trial court judge who admits K.S.A. 2012 Supp. 60-455(b) evidence must give a limiting instruction informing the jury of the specific purpose for admission of the evidence in order to avoid error." 297 Kan. at 579. This is true regardless of which party proposes the evidence.

Again, assuming omission of a limiting instruction was error, it was certainly not clear error. As we have discussed, the jury heard

substantial evidence of Molina's guilt, including the eyewitness testimony of Palomino and Officer Pittman. Viewing the record as a whole, we are not firmly convinced the jury would have returned a different verdict had the instruction been given. Therefore, the district court did not clearly err in failing to give a limiting instruction.

*The district court did not err in failing to give an unrequested instruction on voluntary manslaughter as a lesser included offense of first-degree murder.*

Next, Molina argues the district court clearly erred by failing to give an unrequested lesser included offense instruction on voluntary manslaughter. Molina contends the jury could reasonably have convicted him of heat-of-passion voluntary manslaughter because the evidence demonstrated Molina and Lopez argued with the victims before the shooting.

*Standard of Review/Analytical Framework*

Because Molina neither requested nor objected to the omission of the voluntary manslaughter instruction, we apply *Williams'* framework to determine whether the district court clearly erred in failing to give the instruction. See K.S.A. 22-3414(3); *Williams*, 295 Kan. at 515-16. As noted, we exercise unlimited review in determining whether the district court erred in omitting an instruction and, if so, whether reversal is required. See 295 Kan. at 515-16.

*Analysis*

Lesser included offense instructions must be given if "there is some evidence which would reasonably justify a conviction of some lesser included crime" as defined in K.S.A. 21-3107. See K.S.A. 22-3414(3); *State v. Berry*, 292 Kan. 493, 503, 513, 254 P.3d 1276 (2011). The failure to give a lesser included offense instruction is erroneous if the instruction would have been legally and factually appropriate. *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012).

An instruction on voluntary manslaughter would have been legally appropriate because Molina was charged with first-degree premeditated murder and voluntary manslaughter is a lesser in-

cluded offense of that crime. See *State v. Foster*, 290 Kan. 696, 711, 233 P.3d 265 (2010); *State v. Gallegos*, 286 Kan. 869, 874, 190 P.3d 226 (2008). But the State contends an instruction on voluntary manslaughter would not have been factually appropriate in this case.

At the time of Molina's offense, voluntary manslaughter was defined in relevant part as "the intentional killing of a human being committed: (a) Upon a sudden quarrel or in the heat of passion." K.S.A. 21-3403. The key elements of voluntary manslaughter are (1) an intentional killing, and (2) legally sufficient provocation. *Gallegos*, 286 Kan. at 874.

Focusing on the second element, Molina contends evidence he and Lopez argued with the victims before the shooting established legally sufficient provocation. But the record does not support Molina's position.

" 'Heat of passion' means any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror." *State v. Guebara*, 236 Kan. 791, 796, 696 P.2d 381 (1985); see *Foster*, 290 Kan. at 711-12. "Sudden quarrel is one form of provocation for 'heat of passion' and is not separate and apart from 'heat of passion.' " *State v. Coop*, 223 Kan. 302, 307, 573 P.2d 1017 (1978); see also *State v. Johnson*, 290 Kan. 1038, 1048, 236 P.3d 517 (2010) ("Kansas, along with most states, considers sudden quarrel to be one form of heat of passion.").

"The test of the sufficiency of the provocation is objective, not subjective. The provocation, whether it be 'sudden quarrel' or some other form of provocation, must be sufficient to cause an ordinary man to lose control of his actions and his reason. In applying the objective standard for measuring the sufficiency of the provocation, the standard precludes consideration of the innate peculiarities of the individual defendant." *Guebara*, 236 Kan. 791, Syl. ¶ 3.

"Mere words or gestures, however insulting, do not constitute adequate provocation, but insulting words when accompanied by other conduct, such as assault, may be considered." 236 Kan. at 797.

Here, the evidence demonstrates that Lopez, Molina, and Palomino, who were affiliated with the SPV gang, stopped at a gas

station on 18th and Grandview. Shortly thereafter, members of the rival F13 gang stopped at the same gas station. Palomino remained inside the car while Molina and Lopez talked to the F13s. Though unable to hear their conversation, Palomino could tell that "they were arguing because they were from different gangs." Palomino also described what he saw in a gas station surveillance video that was admitted at trial but is not included in the record on appeal. As confirmed by Palomino, the video showed "a car," "some guys" who Palomino identified as "the F13s," and "two heads there walking back towards [the Honda]," who Palomino identified as Molina and Lopez. Palomino testified that throughout the conversation at the gas station, the F13 gang members did not display any weapons, engage in a fist fight, or attempt to shoot anyone.

According to Palomino, after he, Lopez, and Molina left the gas station, the F13s followed them for a few blocks before turning and driving a different direction. Palomino testified that Lopez, who was the Honda's driver, made a U-turn, caught up to the F13s' car, and pulled alongside it at the traffic light at 18th and Central. There, Molina fired three shots at the F13s' car, killing both victims.

Essentially, Molina urges us to consider the innate peculiarities arising from his gang membership and the SPV's rivalry with the F13s and to conclude that an exchange of unspecified words or gestures with rival gang members is sufficient to cause an ordinary person to lose control of his or her actions and reason. But Molina's argument ignores both the objective standard by which we judge sufficiency and our well-established caselaw. See *Guebara*, 236 Kan. at 796-97.

Further, even if we agreed that the initial confrontation at the gas station satisfied an objective standard, the record also demonstrates Molina had a brief cooling-off period to reflect on that confrontation before the fatal shooting. See, *e.g.*, *State v. Wade*, 295 Kan. 916, 925, 287 P.3d 237 (2012) ("The hallmark of heat of passion is taking action upon impulse without reflection."); *State v. Henson*, 287 Kan. 574, 583, 197 P.3d 456 (2008) ("[A]n act of violence separated from the provocation by sufficient cooling-off time is not the product of heat of passion."); *State v. Follin*, 263

Kan. 28, 38, 947 P.2d 8 (1997) ("An act of violence separated from the provocation by sufficient cooling time is the product of malice and cold calculation rather than the heat of passion.").

Here, the evidence demonstrates the F13s disengaged from the confrontation by following Lopez and Molina for a short distance then driving in a different direction. Lopez and Molina then purposefully made a U-turn and reinitiated contact by pulling alongside the F13s' car, and Molina began shooting. Because a jury could not have reasonably convicted Molina of heat-of-passion voluntary manslaughter on the facts presented, the district court did not err in failing to give the unrequested instruction.

*The district court erred in imposing a hard 50 sentence.*

In his initial appeal brief, Molina argued the district court abused its discretion in determining the aggravating circumstance supporting his hard 50 sentence, *i.e.*, that Molina killed more than one person, was not outweighed by mitigating circumstances. See K.S.A. 21-4635(c) (explaining findings necessary to support imposition of hard 50 sentence); K.S.A. 21-4636(b) (defining one aggravating circumstance as "[t]he defendant knowingly or purposely killed or created a great risk of death to more than one person").

After the parties filed their initial briefs, the United States Supreme Court issued *Alleyne v. United States*, 570 U.S. \_\_\_, 133 S. Ct. 2151, 2155, 2158, 186 L. Ed. 2d 314 (2013). In *Alleyne*, the Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" and proven beyond a reasonable doubt. 133 S. Ct. at 2155. We subsequently granted Molina's motion to file a supplemental brief challenging the constitutionality of his hard 50 sentence in light of *Alleyne*.

1. *The statutory procedure used to impose Molina's hard 50 sentence is unconstitutional.*

We recently held the statutory procedure for imposing a hard 50 sentence as provided in K.S.A. 21-4635 violates the Sixth Amendment to the United States Constitution because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an in-

creased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt. *State v. Soto*, 299 Kan. 102, 103-04, 124, 322 P.3d 334 (2014). Consequently, the district court's imposition of a hard 50 sentence violated Molina's Sixth Amendment right to a jury trial, and we vacate his sentence.

### 2. *If a modified harmless error test applies, we could not hold the hard 50/Alleyne error harmless in this case.*

In *Soto*, we considered but declined to decide whether hard 50/ *Alleyne* errors are subject to review for harmless error under a modified harmless error test. 299 Kan. at 126. Under the test discussed in *Soto*, we suggested we could hold a hard 50/*Alleyne* error harmless only if we could conclude beyond a reasonable doubt (1) that the aggravating circumstance was supported by uncontroverted and overwhelming evidence such that the jury would have found the existence of the aggravating circumstance beyond a reasonable doubt, and (2) that no rational jury would have determined that mitigating circumstances outweighed aggravating circumstances. *Soto*, 299 Kan. at 127. We noted both prongs of this test would rarely be met and deferred a decision as to whether this modified harmless error standard would apply in the hard 50/*Alleyne* context until that rare case presents itself. 299 Kan. at 127-28.

This is not such a case. Here, even assuming we could conclude the jury's guilty verdicts on both murder charges satisfied the first part of the modified harmless error test, we could not conclude with any degree of certainty that the second part of the test was satisfied. Molina presented mitigating evidence and argued the hard 50 sentence should not be imposed because he was only 20 years old at the time, his family loved him, he was a good father to his child, and the shooting was spurred by a "gang mentality." While the district court found two mitigating circumstances—Molina's age and that he was loved by his family—and concluded those circumstances did not outweigh the aggravating circumstance, we cannot say with the requisite confidence that no rational jury would have determined that mitigating circumstances outweighed the ag-

gravating circumstance. See *Soto*, 299 Kan. at 127. Consequently, even if we were to apply a modified harmless error analysis in this case, we could not hold the error harmless.

> 3. *We decline to issue an advisory opinion as to the appropriate course of action on remand.*

Because we must remand this case for resentencing, we next consider the parties' invitation to address the appropriate remedy on remand. Molina argues he must be sentenced to a hard 25 sentence because that is the only sentence supported by the jury's factual findings. The State, on the other hand, points out that after *Alleyne*, the Kansas Legislature amended Kansas' hard 50 sentencing scheme and expressly provided for retroactive application in cases pending on appeal. See L. 2013, ch. 1, sec. 1 (Special Session); K.S.A. 2013 Supp. 21-6620. Thus, the State contends it may seek a hard 50 sentence on remand under those retroactive provisions.

For the same reasons discussed in *Soto*, we decline to issue an advisory opinion as to the appropriate course of action on remand. See *Soto*, 299 Kan. at 128. Instead, we hold only that because Molina's sentence was imposed in violation of his Sixth Amendment right to a jury trial, his hard 50 sentence must be vacated and the case remanded for resentencing. Of course, the parties are free to present arguments to the district court on remand regarding application of the amended statute.

*The district court did not violate Molina's right to be free from double jeopardy by imposing consecutive life sentences.*

Although we are vacating Molina's hard 50 sentence and remanding for resentencing, we briefly address Molina's claim the district court violated his right to be free from double jeopardy when it utilized the same aggravating factor to impose a hard 50 sentence and consecutive life sentences.

Molina's claim contravenes well-established caselaw. See *State v. Jamison*, 269 Kan. 564, 577, 7 P.3d 1204 (2000) ("It does not violate double jeopardy to apply the same aggravating factor—that the defendant killed more than one person—to both convictions in imposing the hard 40 sentence on each count or in running those

terms consecutively."); *State v. Stafford*, 255 Kan. 807, 818, 878 P.2d 820 (1994) (concluding sentencing court may use same aggravating factor to justify hard 40 sentence and consecutive life sentences). Because Molina presents no compelling authority or argument to support his assertion that these cases were wrongly decided, we decline to revisit these decisions.

*The district court erred in imposing lifetime postrelease supervision for Molina's off-grid convictions.*

Finally, both parties agree the district court erred in imposing lifetime postrelease supervision as part of Molina's life sentences for his off-grid, first-degree murder convictions. See *State v. Cash*, 293 Kan. 326, 330-31, 263 P.3d 786 (2011) (concluding district court lacks authority to impose lifetime postrelease supervision in conjunction with an off-grid indeterminate sentence); K.S.A. 2013 Supp. 22-3717(b)(1) (establishing parole eligibility rather than postrelease supervision for inmates convicted of first-degree premeditated murder). Because we have vacated Molina's hard 50 sentence on other grounds, including the lifetime postrelease supervision period, we need only vacate the term of lifetime postrelease supervision imposed as part of his remaining hard 25 sentence. See *State v. Summers*, 293 Kan. 819, 832, 272 P.3d 1 (2012).

Convictions affirmed, sentence vacated in part, and case remanded for resentencing.