NOT DESIGNATED FOR PUBLICATION

No. 119,917

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JOSEPH CALISTI,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed February 21, 2020. Affirmed in part and reversed in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.


PER CURIAM: Robert Joseph Calisti appeals his jury convictions for felony fleeing and eluding and for misdemeanor offenses stemming from a police chase. We are unpersuaded by Calisti's claims of erroneous jury instructions, insufficient evidence of criminal damage to property, and cumulative error. But we agree that his conviction for leaving the scene of an accident involving damage to attended property is not supported by sufficient evidence and must be reversed. We affirm his remaining convictions.

*Factual and Procedural Background*

In November 2017, Officer Eli Norris was on patrol when he learned that the license tag on a car was reported stolen out of Missouri. Because the tag was reported stolen, Norris presumed the car had also been stolen and initiated a felony stop. Calisti was driving that car.

After Norris activated the lights and sirens on his patrol car, Calisti pulled over but left the car running. While getting out of his patrol car, Norris pulled out his service gun and used his loudspeaker to direct the car's occupants to get their hands up and out of their windows. Everyone complied. But when Norris told Calisti to reach back into the car and turn the car off, Calisti put the car in gear and drove away. A chase ensued.

Norris pursued Calisti and radioed for backup. Eventually, Officer Joshua Peters and other officers joined the chase. The chase started fairly slowly and Calisti occasionally used his turn signals. But eventually Calisti sped, failed to yield to oncoming traffic, crossed the center line, failed to use his turn signals, failed to stop at stop signs, passed another car on the shoulder, drove through a residential yard, and drove through a fence maintained by the Kansas Department of Transportation (KDOT). Calisti also drove down a steep incline, through a ditch, and back up an embankment to the highway. He drove at high speeds near a school and almost caused an officer to lose control of his car due to the speed of the chase on gravel roads. Calisti eventually drove along a power line easement before getting his car stuck in a small stream. At that point, police were able to apprehend Calisti and his two passengers.

When police impounded the car Calisti had been driving, they found methamphetamine and drug paraphernalia in it. They also learned that the car, as well as its tag, had been stolen in Missouri.

A jury found Calisti guilty of the following charges:

- felony fleeing and eluding;
- criminal damage to property;
- driving while suspended;
- leaving the scene of an accident;
- failure to register the car; and
-  several traffic infractions.

The district court sentenced Calisti to 14 months in jail for his misdemeanor convictions and 8 months in prison for the felony fleeing and eluding. It then suspended the prison term and placed Calisti on 12 months' supervised probation for his felony conviction, which was to start after Calisti served his jail time.

Calisti now appeals.

*Did the District Court Clearly Err in Providing no Jury Instruction on Misdemeanor Fleeing and Eluding?*

We first address Calisti's claims of error regarding jury instructions. Calisti concedes that he failed to object to the district court's alleged failures relating to jury instructions. Thus, we apply the clearly erroneous standard to each of his claims of instructional error. See K.S.A. 2018 Supp. 22-3414(3); *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). Under this standard, we will reverse the district court only if an instruction error occurred and we are firmly convinced that the jury would have reached a different verdict had the error not occurred. Calisti, as the party claiming clear error, has the burden to demonstrate the necessary prejudice. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

*Legal and Factual Appropriateness of the Instruction*

Calisti first claims that the district court should have instructed the jury on misdemeanor fleeing and eluding. We thus ask whether the instruction was legally and factually appropriate. *McLinn*, 307 Kan. at 318. We use unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016).

The State concedes that an instruction regarding a lesser included offense is legally appropriate when the lesser crime is an included offense of the charged crime. See *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). That is the case here. All of the elements of misdemeanor fleeing and eluding are included within felony fleeing and eluding because it is a lesser degree of the same crime. Thus, misdemeanor fleeing and eluding is a lesser included offense of felony fleeing and eluding. See K.S.A. 2018 Supp. 8-1568(a)-(b); K.S.A. 2018 Supp. 21-5109(b). An instruction regarding misdemeanor fleeing and eluding would have been legally appropriate.

We next consider factual appropriateness under K.S.A. 2018 Supp. 22-3414(3). See *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014).

> "The question of whether the instruction would have been factually appropriate is more difficult. See *State v. Molina,* 299 Kan. 651, 661, 325 P.3d 1142 (2014) (failure to instruct on lesser included crime erroneous only if instruction would have been factually appropriate). '"[W]here there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge *shall* instruct the jury as to the crime charged and any lesser included crime."' *Armstrong*, 299 Kan. at 432 . . .; see also *State v. Story*, 300 Kan. 702, 710, 334 P.3d 297 (2014) (evidence must reasonably justify conviction of lesser included crime). If, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is

4

error. *Armstrong*, 299 Kan. at 433." *State v. Fisher*, 304 Kan. 242, 257-58, 373 P.3d 781 (2016).

Calisti argues that sufficient evidence showed that officers activated their lights and sirens but Calisti still drove away, so the jury could have found him guilty of misdemeanor fleeing and eluding. Under K.S.A. 2018 Supp. 8-1568(a), a driver is guilty of misdemeanor fleeing and eluding if the driver is given a visual or audible signal to stop but the driver "willfully fails or refuses to . . . stop for a pursuing police car . . . or otherwise flees or attempts to elude a pursuing police car."

The jury convicted Calisti of felony fleeing and eluding while driving recklessly. Our felony fleeing and eluding statute states:

"(b) Any driver of a motor car who willfully fails or refuses to bring such driver's car to a stop, or who otherwise flees or attempts to elude a pursuing police car or police bicycle, when given visual or audible signal to bring the car to a stop, and who: (1) Commits any of the following during a police pursuit: . . . (C) engages in reckless driving as defined by K.S.A. 8-1566, and amendments thereto; . . .

"(2) . . . shall be guilty as provided in subsection (c)(2)." K.S.A. 2018 Supp. 8-1568(b).

After reviewing all of the evidence, instead of the little slice of evidence Calisti focuses on, we are not convinced that a rational fact-finder could have found Calisti guilty of misdemeanor fleeing and eluding. Calisti drove recklessly and committed seven other violations. Calisti sped while driving through town and while on gravel roads. And he made much of the chase more difficult and dangerous by traveling on a two-lane highway. At trial, Norris testified that Calisti reached speeds of 75 mph in a 45 mph zone, 85 mph in a 75 mph zone, and 45 mph while in a high school parking lot—a 25 mph zone. In the video footage of Peters' dash camera, the officer can be heard stating Calisti was reaching speeds of 100 mph before slowing down. Officer Peters testified that he

5

stayed at 100 mph as he chased Calisti by Jackson Heights High School. Peters also testified that he almost lost control of his patrol car because the chase occurred on a dirt road and at high speeds. Calisti also drove through a residential yard and a barbwire fence, into oncoming traffic to cross a highway. He committed several traffic violations such as failing to stop, failing to signal, and passing on the right shoulder. He was also driving on a suspended license and caused property damage. And Calisti's actions created a lengthy chase in which several officers had to join and risk their own safety.

In light of these circumstances, a misdemeanor fleeing and eluding instruction was factually inappropriate, so the district court did not err in not giving that instruction. See *State v. Cox*, No. 118,438, 2018 WL 6712287, at \*3-4 (Kan. App. 2018) (finding misdemeanor fleeing and eluding instruction factually inappropriate where evidence showed Cox drove recklessly and committed 18 moving violations) *rev. denied* 310 Kan. __ (September 27, 2019).

*Did the District Court Clearly Err by Instructing the Jury on the Definition of Reckless Driving?*

Calisti next argues that the district court gave a definition for recklessness that was inconsistent with the statutory definition of reckless driving under which he was charged. The State argues that there was no error because the district court used the Pattern Instruction for Kansas (PIK) instruction for reckless driving and that instruction was in accord with the statutory definition for reckless conduct, citing *State v. Remmers*, 278 Kan. 598, 600, 102 P.3d 433 (2004).

"[A]n instruction must always fairly and accurately state the applicable law." *Plummer*, 295 Kan. at 161."A trial court has the duty to 'define the offense charged in the jury instructions, either in the language of the statute or in appropriate and accurate

6

language of the court' and 'inform the jury of every essential element of the crime that is charged.'" *Butler*, 307 Kan. at 847.

Appellate courts consider "'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have mislead the jury.'" *Butler*, 307 Kan. at 843.

At trial, the district court gave the jury an instruction for fleeing and eluding, which required the jury to find Calisti was driving a vehicle in a reckless manner. The instruction included this definition for reckless driving:  "'Reckless' means driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger." Notably, this instruction—Instruction 12—comports with PIK Crim. 4th 66.110 (fleeing or attempting to elude) and PIK Crim. 4th 66.060 (reckless driving).

Calisti was charged under K.S.A. 2017 Supp. 8-1568(b)(1)(C), which defines someone guilty of fleeing and eluding as:

> "(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police car or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) . . . (C) engages in reckless driving as defined by K.S.A. 8-1566."

K.S.A. 8-1566(a) defines a reckless driver as "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property." Because this statutory definition requires "willful or wanton" conduct, and the jury was not instructed in those terms, Calisti argues that giving an instruction for reckless conduct was legally

7

inappropriate. He asserts that the district court was required to give the specific statutory definition from K.S.A. 8-1566.

A panel of this court considered and rejected a similar argument in *State v. Ford*, No. 112,877, 2016 WL 2610259 (Kan. App. 2016) (unpublished opinion). Although the *Ford* panel first disposed of Ford's claim under the invited error doctrine, which does not apply here, the panel emphasized that the instruction given was "appropriate and accurate language from the PIK instruction, which is a practice approved of by our Supreme Court." 2016 WL 2610259, at *5. Calisti argues that this finding is "beside the point. But our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *Butler*, 307 Kan. at 847.

Calisti relies on *State v. Richardson*, 290 Kan. 176, 224 P.3d 553 (2010). But the panel in *Ford* also found that reliance on *Richardson* was misplaced because *Richardson* dealt with the need to instruct the jury on the specific underlying moving violations and their elements that the State was relying on in that case to convict Richardson of reckless driving. *Ford*, 2016 WL 2610259, at *6; see *Richardson*, 290 Kan. at 180-83. Using the *Ford* decision as guidance, we find that the definition given was not given in error because it is appropriate and accurate language still used in the PIK instruction.

The State adds that our Supreme Court's decision in *Remmers*, 278 Kan. at 600, also supports a finding that the district court did not commit error in instructing the jury as it did. In *Remmers*, our Supreme Court found that the language of the PIK instruction at issue was in accordance with how the term "reckless" was defined under the criminal intent statute at that time—K.S.A. 21-3201:

> "(c) Reckless conduct is conduct done under circumstances that show a
> realization of the imminence of danger to the person of another and a conscious and

8

unjustifiable disregard of that danger. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'wantonness' are included within the term 'recklessness' as used in this code."

After our criminal statutes were recodified, the wording of this definition changed. Now, "[a] person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2018 Supp. 21-5202(j). This is the exact language that was provided to the jury. We are not persuaded that there is any substantive difference between the definition of reckless driving used here and that used in K.S.A. 8-1566(a) (driving a vehicle "in willful or wanton disregard for the safety of persons or property"). Because the instruction properly and fairly states the applicable law, it is not "legally infirm." *Plummer*, 295 Kan. at 161.

Nonetheless, the plain language of K.S.A. 2018 Supp. 8-1568 requires the fact-finder to find the defendant "engages in reckless driving as defined by K.S.A. 8-1566." But even if the instruction that defined reckless driving in other terms was given in error and an instruction including a definition for willful and wanton conduct was required, reversal is not necessary here. Calisti cannot establish clear error. The evidence presented at trial was more than enough to establish felony fleeing and eluding. The jury saw both Norris' and Peters' dash camera footage showing Calisti driving away from a stop and then fleeing for several minutes. The videos, coupled with the officers' testimony, establish that Calisti drove his car in willful or wanton disregard for the safety of persons or property.

At sentencing, Calisti told the district court that the reason he engaged in a high speed chase with the police is because he was fleeing for his life. Calisti said he had to run because the police had their guns drawn and he feared he would be shot. This fear, he

9

said, stemmed from living in Kansas City. But Calisti never provided the jury with this explanation because he did not testify at trial. But in his opening remarks, Calisti's counsel told the jury that "not all of us have the same life experience with regard to law enforcement. Many of us have good experiences, many of us have mixed experiences, and some of us have only bad experiences with regard to law enforcement." In his closing statement, Calisti's attorney stated that the officer pointed a gun at the car when he first stopped Calisti. He then implied that the gun was the reason Calisti did not think properly and chose to flee. Even so, the jury found that Calisti drove recklessly under the definition provided. Considering this and the rest of the evidence presented at trial, we are not firmly convinced that the jury would have reached a different verdict had the error not occurred. See *McLinn*, 307 Kan. at 318.

*Did the District Court Clearly Err by Instructing the Jury About the Mental State Necessary to Commit Fleeing and Eluding, Criminal Damage to Property, and Driving While Suspended*?

Calisti next argues that the jury was not properly instructed on the required mental state for fleeing and eluding, criminal damage to property, and driving while suspended. He argues the district court gave conflicting instructions for the required mental states because Instruction 5 directed the jury to find that these crimes could be committed intentionally, knowingly, or recklessly.

Instruction 5 stated:

"The State must prove that the defendant committed the crime(s) of Possession of Methamphetamine, Fleeing or Eluding a Police Officer, Possession of Drug Paraphernalia, Driving While Suspended, Failure to Remain at an Accident, Failure to Yield to an Emergency Car, Improper Registration, Improper Lane Change, Improper Passing, Speeding and Criminal Damage to Property:

10

- Intentionally, or
- Knowingly, or
- Recklessly."

The mental state instruction comports with PIK Crim. 4th 52.010. The Notes on Use to that instruction state: "The Committee believes this instruction must be given in every case unless: 1. the definition of the crime charged plainly dispenses with a culpable mental state; or 2. a culpable mental state is otherwise excluded under K.S.A. 21-5203." PIK Crim. 4th 52.010 (2018 Supp.). Neither of those exceptions applies here. So, according to Calisti, the district court erroneously instructed the jury that it could find him guilty of these charges under a reckless culpable mental state even though a greater mental state was required for each offense.

But the jury was also provided with separate instructions for fleeing and eluding, driving while suspended, and criminal damage to property. The term "recklessly" was not included in the elements instructions for driving while suspended or criminal damage to property. Instead, the jury was instructed that each of those offenses required a knowing mental state. As a result, we find that although Instruction 5 listed the different mental states that might apply to all of the crimes Calisti was charged with, the jury was still properly instructed regarding the mental states that did apply for driving while suspended and criminal damage to property.

Regarding the fleeing and eluding charge, Calisti argues that the relevant mental state was willingly. But willingness relates only to Calisti's failure to stop the car, not the recklessness of the driving. See K.S.A. 2018 Supp. 8-1568(b). The jury was properly instructed that it needed to find that Calisti "willfully failed or refused to bring the motor car to a stop for, or otherwise fled or attempted to elude, a pursuing police car."

11

We find that the district court did not err in giving Instruction 5—the mental state instruction.

*Does Sufficient Evidence Support a Conviction for Criminal Damage to Property?*

We next address Calisti's argument that insufficient evidence supports his conviction for criminal damage to property. He contends that the State failed to present testimony from KDOT to establish that it had an interest in the fence that was damaged and failed to present evidence that KDOT did not consent to that damage.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

K.S.A. 2017 Supp. 21-5813(a)(1) required the State to prove that Calisti knowingly damaged, destroyed, defaced, or substantially impaired "the use of any property in which another has an interest without the consent of such other person."

Calisti argues that someone from KDOT was required to testify regarding its interest in and its lack of consent to damage the fence. But he fails to support that argument by citation to any authority. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (lack of pertinent authority is akin to failing to brief an issue).

Nonetheless, we review the evidence to see whether each element is supported by sufficient evidence. Generally, a verdict may be supported by circumstantial evidence, if

12

such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). Here, we do not need direct testimony by the interest holder because circumstantial evidence of that interest may be sufficient. See *State v. Miller*, No. 117,840, 2019 WL 494349, at *1 (Kan. App.) (unpublished opinion) (finding sufficient evidence existed to establish that a person had an interest in a car, without the car owner specifically testifying that he had an interest in the car), *rev. denied* 310 Kan. __ (September 27, 2019).

The circumstantial evidence presented at Calisti's trial provides a basis for a reasonable inference by the jury that KDOT had an interest in the fence Calisti damaged. Norris described that fence as a KDOT fence. Norris also testified that the fence was maintained by KDOT and that Calisti "drove through the KDOT fence." Likewise, Peters testified that Calisti damaged the fence when he drove through it and that the fence had been repaired before trial. This evidence is sufficient to establish that KDOT had an interest in the fence.

The testimony did not, however, establish the nature of KDOT's interest in the damaged fence. Whether evidence must establish the nature of the interest depends on whether the interest was contested.

> "[W]hen the interest is not contested, the State 'is not required to establish exactly what the nature of the "any interest" is, be it a fee simple, a rental, or a tenancy, in order to satisfy the statutory requirement.' But when 'the interest is contested at trial, it may be incumbent upon the State to establish the nature' of the interest. [Citations omitted.]" *Fisher*, 304 Kan. at 262.

Calisti argues that KDOT's interest in the fence was contested at trial. Yet our review of the record shows no support for that assertion. Calisti did not cross-examine

13

Norris or Peters about their testimony of KDOT's interest in the fence, and Calisti did not present any evidence tending to show that KDOT lacked an interest in the fence.

Because KDOT's interest in the fence was not contested, the State was not required to establish exactly what the nature of KDOT's interest was. It is enough that the State proved, through circumstantial or other evidence, that KDOT had a possessory or a proprietary interest in the damaged fence. See *Fisher*, 304 Kan. at 262.

Finally, Calisti is correct that no direct evidence showed KDOT's lack of consent. Nonetheless, the jury could reasonably infer from the evidence presented at trial that KDOT did not give consent for Calisti to damage its fence. Peters' testimony was uncontested that the fence was repaired after Calisti damaged it. A person could reasonably infer that KDOT would not have repaired the fence if it had given consent for Calisti to drive his car through it. See *State v. Boyd*, No. 116, 619, 2017 WL 2901179, at *2 (Kan. App. 2017) (unpublished opinion) (using repair as evidence of lack of consent). We find sufficient evidence to support this conviction.

*Does Sufficient Evidence Support a Conviction for Leaving the Scene of an Accident Involving Damage to Attended Property?*

Count eight charged Calisti with violating K.S.A. 2017 Supp. 8-1602(a), and the jury found him guilty of that charge. That subsection requires, in part, that a driver stop at the scene of damage to "any attended car or property." Calisti did not stop when he damaged the KDOT fence, yet the parties agree that no evidence showed that anyone "attended" or was present at the fence at the time of the damage.

Both the State and Calisti agree that Calisti's conviction for leaving the scene of an accident involving damage to attended property was based on insufficient evidence because the State failed to prove this element of the offense. Having reviewed the record

14

in the light most favorable to the State, we find insufficient evidence to support this conviction. Accordingly, we reverse Calisti's conviction under K.S.A. 2017 Supp. 8-1602.

*Did Cumulative Error Deprive Calisti of a Fair Trial?*

Calisti argues the cumulative effect of the district court's errors were so prejudicial that this court should grant him a new trial. But we have found only one error, and that error has no impact on the rest of the issues Calisti raises. A single error cannot support reversal under the cumulative error doctrine. *Butler*, 307 Kan. at 868.

We affirm in part and reverse in part.