IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,986

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY J. COOPER,
*Appellant.*

SYLLABUS BY THE COURT

1.

It is a violation of K.S.A. 22-3420 (prior to amendment in 2014) for a district court to answer, outside the defendant's presence, a question received from the jury during its deliberations.

2.

Ordinarily, whether a victim has suffered great bodily harm is a question of fact for the jury to decide. The PIK Crim. 3d 56.18 Comment that "[a] 'through and through' bullet wound is 'great bodily harm' as a matter of law" is disapproved as an erroneous statement of law.

3.

When a defendant challenges the district court's failure to give a lesser included offense instruction for the first time on appeal, the defendant must demonstrate that the failure was clearly erroneous, *i.e.*, the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 30, 2013. Appeal from Wyandotte District Court; JOHN J. MCNALLY, judge. Opinion filed February 12, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum*, assistant district attorney, argued the cause, and *Christopher Mann*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  A jury found Timothy J. Cooper guilty of one count of aggravated battery for shooting Richard Fleig in the foot. The district court sentenced Cooper to 162 months in prison. On appeal, Cooper argues:  (1) the district court violated his constitutional rights to be present at all critical stages of his trial, to an impartial judge, and to a public trial, because the district court submitted a written answer to a jury question outside of his presence instead of answering in open court; and (2) the district court committed clear error by failing to instruct the jury on a lesser included severity level for the crime of aggravated battery.

We affirm Cooper's conviction and hold:  (1) any error by the district court in answering the jury's question with a written response in violation of Cooper's right to be present was harmless, and any alleged violations of Cooper's right to an impartial judge or public trial were insufficiently briefed and thus not preserved for appellate review; and (2) while a jury instruction on the lesser included crime of level 7 aggravated battery can be legally and factually appropriate, the district court's failure to give the instruction in this case was not clear error.

FACTUAL AND PROCEDURAL BACKGROUND

Richard Fleig was raking leaves in front of a friend's home when a van pulled into the driveway. Two men, later identified as Cooper and Shawn Franklin, got out. They approached Fleig and asked him if he knew a juvenile named H.F. Fleig initially said no but then remembered his daughter had a friend by that name and said "[y]eah, yeah, I do." Cooper then tried to punch Fleig, but Fleig ducked and the blow only grazed the top of his head.

Fleig sprung into action. First, he ducked behind his trailer and, as he put it, "hollered for my dog because my dog will protect me." Fleig grabbed "a big iron pole that I use to break rock loose" and advanced toward Cooper and Franklin, believing he could defend himself from the two men "if I got my dog and my stick." Cooper and Franklin then beat an immediate retreat to the van and began to back out of the driveway.

Fleig testified that upon seeing the van backing out of the driveway, "I said, Come on back here, you stupid little sons of bitches. I'll bust you both in the head. I said, [b]oth of you all come on and come at me one—one at a time, I said, and I'll take you on." In Fleig's words, however, "they didn't want to do that. They wanted to be sissies and shoot at me." Cooper, who was in the driver's seat of the van, had drawn a gun and had begun to fire at Fleig. Fleig, in response to the gunfire, ducked behind a tree. Fleig's assailants fled in the van, and Fleig, noticing a pain in his leg, looked down to see "blood gushing out of my foot." Fleig pulled off his shoe to assess the damage and almost passed out from "just the sheer shock of it alone." Fleig then called 911. Franklin and H.F., who was a passenger in the van, both testified at trial corroborating Fleig's version of events.

Fleig suffered a gunshot wound to his foot. The emergency room nurse who examined Fleig described the wound as "a single gunshot wound to his right great toe with a graze wound to the top of his foot." The nurse noted the wound "caused a great deal of pain, and it can cause nerve damage or . . . burning pain in his foot." Fleig described the wound saying, "They just blew part of my toe off, part of my big toe off. And a little bit—and a piece up underneath it where you walk on the ball of your foot, it blew a little chunk of that out. So I've got a deep indentation from the bullet wound." Fleig testified the wound still hurts "every now and then." The State also introduced as evidence two photographs of Fleig's foot injury.

The jury convicted Cooper of a severity level 4 aggravated battery, which is defined as "[i]ntentionally causing great bodily harm to another person." K.S.A. 21-3414(a)(1)(A). The district court sentenced Cooper to 162 months in prison. Cooper appealed the conviction to the Court of Appeals, making the same arguments he now reprises here. *State v. Cooper*, No. 106,986, 2013 WL 4729337 (Kan. App. 2013) (unpublished opinion). The Court of Appeals held Cooper's rights were not violated by the district court's method of answering the jury's question and held the lesser included instruction for a severity level 7 aggravated battery was not factually supported. 2013 WL 4729337, at *8. We granted Cooper's petition for review on both issues pursuant to K.S.A. 20-3018(b) and K.S.A. 60-2101(b).

ANALYSIS

*Any error in the district court's method of answering the jury's question was harmless.*

During its deliberations, the jury presented three questions to the district court. The district court discussed the questions in chambers with both counsel and Cooper present, settling on the appropriate answers. Cooper does not contend the court's answers

4

were wrong or otherwise erroneous. Rather, he argues the district court violated his constitutional rights by providing those answers to the jury via a written response.

Cooper contends the only permissible procedure for answering jury questions requires doing so in open court with the defendant present. In asserting this claim, Cooper argues both that the district court failed to comply with the statutory procedure for answering jury questions in open court pursuant to K.S.A. 22-3420(3) and violated his constitutionally protected rights to be present at every critical stage of the trial, to a public trial, and to an impartial judge. We exercise plenary review. See *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014) (reviewing same arguments de novo).

We recently addressed these same issues in *State v. Bolze-Sann*, 302 Kan. 198, 214, 352 P.3d 511 (2015). As in that case, the State at oral argument conceded the district court's procedure for answering the jury's question violated Cooper's statutory and constitutional right to be present at every critical stage of the trial. Presumably, the State relied on prior caselaw from this court when making this concession. See *State v. Verser*, 299 Kan. 776, 788-89, 326 P.3d 1046 (2014) (finding it statutory and constitutional error for the district court to answer a juror's question by note rather than in open court with the defendant present); *State v. King*, 297 Kan. 955, 967, 305 P.3d 641 (2013) (defendant's rights violated when the court communicated with the jury outside of the defendant's presence). Likewise, the State has not asked us to reexamine the rationales or holdings of those cases, either on their own merits or in light of the recent changes to K.S.A. 2014 Supp. 22-3420 expressly permitting district courts to answer a jury question during deliberation in writing. See *Bolze-Sann*, 302 Kan. at 216; see also 302 Kan. at 220 (Stegall, J., concurring) (discussing confusion in existing caselaw surrounding the question). Given the State's concession of error, we will move directly to a harmlessness analysis, assuming constitutional error and applying the constitutional harmless error standard. See 302 Kan. at 216.

5

As we recently said:

"Under the constitutional harmless error standard, we may declare an error harmless only if "'the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."' *Verser*, 299 Kan. at 789 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6); see *Chapman v. California*, 386 U.S. 18, 22-23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (declining to reverse for constitutional errors that do not affect the substantial rights of a party).

"Several factors help determine whether a violation of this right is harmless beyond a reasonable doubt: (1) the overall strength of the case against the defendant; (2) whether either party objected to the manner in which the judge handled the communication; (3) whether the judge's communication with the jury 'concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter,' and also how the communication was conveyed to the jury; and (4) the ability of any posttrial remedy to 'mitigate the constitutional error.' *McGinnes*, 266 Kan. at 132-37; see *Herbel*, 296 Kan. at 1111." *Bolze-Sann*, 302 Kan. at 216-17.

Applying this standard, we conclude the State has carried its burden to show any error was harmless beyond a reasonable doubt. The case against Cooper was strong. Multiple witnesses identified him as the shooter, and the crime itself, the gunshot wound to the foot, was well established. Neither party objected to the district court's method of answering the questions, and the answers themselves were innocuous and are not at issue on appeal. Cooper makes no argument that the content of the district court's response was prejudicial or inaccurate. Further, Cooper did not seek a posttrial remedy on these grounds. See *State v. Herbel*, 296 Kan. 1101, 1115, 299 P.3d 292 (2013). The State has

6

carried its burden to show that any error in violation of Cooper's right to be present at every critical stage of his trial was harmless beyond a reasonable doubt.

Cooper also asserts the district court's method of answering the jury's question violated his constitutional rights to a public trial and to an impartial judge. This court has already emphasized, however, that "[w]e have never characterized a district court's failure to comply with the deliberating jury procedures provided in K.S.A. 22-3420(3) or later statutes as a violation of the constitutional rights to a public trial or an impartial judge." *Bolze-Sann*, 302 Kan. at 218. We have repeatedly treated identical arguments, asserting the same claim without support, as akin to failing to brief the issue, which has resulted in a failure to preserve the argument for appellate review. See *Bolze-Sann*, 302 Kan. at 218-19; *Verser*, 299 Kan. at 791; *Bowen*, 299 Kan. at 355-56. We reach the same conclusion here.

Finally, Cooper argues the district court's method of providing answers to the jury via a written response resulted in cumulative error based on his assertion of multiple constitutional violations. Because Cooper has only properly presented one instance of harmless error, Cooper's argument that the alleged violations were cumulative error also fails as "[a] single error does not constitute cumulative error." *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010).

*The district court's failure to give the lesser included instruction was not clear error.*

Cooper's second argument on appeal is that the district court committed clear error by failing to instruct the jury on a lesser included crime of aggravated battery. The jury convicted Cooper of the higher degree of aggravated battery defined as "[i]ntentionally causing great bodily harm to another person." K.S.A. 21-3414(a)(1)(A). In contrast, the lower severity level aggravated battery criminalizes "intentionally causing bodily harm to

7

another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 21-3414(a)(1)(B). The pertinent distinction, then, between the two crimes in this case is whether Cooper intentionally caused *great* bodily harm or merely caused bodily harm. At the time of trial, the district court and Cooper agreed that the lesser included instruction was prohibited as a matter of law and Cooper did not request it. We review alleged jury instruction errors using the following framework:

> "When reviewing the failure to give a lesser included instruction, (1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless." *State v. Soto*, 301 Kan. 969, Syl. ¶ 9, 349 P.3d 1256 (2015).

When a defendant challenges the district court's failure to give a lesser included offense instruction for the first time on appeal, the reviewing court applies the clearly erroneous standard provided in K.S.A. 2014 Supp. 22-3414(3), requiring that the defendant demonstrate "that the failure was clearly erroneous, *i.e.*, the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict." *Soto*, 301 Kan. 969, Syl. ¶ 10.

We have previously ruled that a severity level 7 aggravated battery is a lesser included offense of a severity level 4 aggravated battery, meaning the instruction was legally appropriate. *State v. Williams*, 295 Kan. 506, 521, 286 P.3d 195 (2012). The district court's analysis should have then turned to whether the instruction was factually

8

supported. But rather than considering the supporting facts, the district court ruled that the instruction could not be given as a matter of law. Cooper actually agreed with the district court on this point as both the court and Cooper relied on a Comment in PIK Crim. 3d 56.18, which states: "A 'through and through' bullet wound is 'great bodily harm' as a matter of law and can only be a severity level 4 (intentional) or a severity level 5 (reckless) aggravated battery." (Citing *State v. Valentine*, 260 Kan. 431, 921 P.2d 770 [1996], and *State v. Brice*, 276 Kan. 758, 80 P.3d 1113 [2003]); see PIK Crim. 4th 54.310 (comments stating the same).

In the time since Cooper's trial, however, this court has expressed its disapproval of such "matter of law" decisions (and by extension, the PIK comment), noting: "Ordinarily, whether a victim has suffered great bodily harm is a question of fact for the jury to decide. [Citation omitted.] But that seemingly straightforward proposition has become muddled by some opinions that chose to take the decision away from the jury." *Williams*, 295 Kan. at 523.

Moreover, in *Brice*, 276 Kan. at 774, which the PIK cited in support of the erroneous comment, we had already clarified that "we do disapprove of the statement in *Valentine*, [and other cases] that a through and through bullet wound is great bodily harm as a matter of law." In *Brice*, 276 Kan. at 760, the victim was shot in the upper right thigh and the bullet exited through the right buttock, missing major bones and arteries and resulting in a "'through and through injury.'" While we held it was not error for the trial court to decline to give the lesser "bodily harm" form of aggravated battery, it was because the instruction was not factually supported *in that case*:

> "Whether there is evidence in the case to support the giving of a lesser included
> instruction is a determination to be made by the trial court. If there is evidence that the

9

harm was slight, trivial, moderate, or minor, then the trial court must give a lesser included instruction." 276 Kan. at 774.

Therefore, in this case, the district court erred when it ruled the lesser included instruction inapplicable as a matter of law. The comment to the PIK instruction indicating otherwise is disapproved as an erroneous statement of law.

Holding the district court's legal ruling incorrect, our analysis returns to the usual pattern. We must determine whether there was sufficient evidence to "reasonably justify a conviction of some lesser included crime." K.S.A. 22-3414(3). Again, the crimes are distinguished in this case by the difference between "bodily harm" and "great bodily harm." K.S.A. 21-3414(a)(1)(A), (B). This distinction is not defined in statute, although we have described "great bodily harm" as "more than slight, trivial, minor, or moderate harm, that does not include mere bruising, which is likely to be sustained by simple battery." *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 (2006). The parties dispute whether the evidence would have reasonably justified a finding that Fleig's gunshot wound was merely "bodily harm." While recognizing our guidance in *Williams*, 295 Kan. at 523, that this distinction is usually "a question of fact for the jury to decide," we find it unnecessary to address the factual dispute in this case because, even assuming the instruction was factually appropriate, we conclude there is no reasonable possibility the error affected the verdict. See *State v. Killings*, 301 Kan. 214, 223, 340 P.3d 1186 (2015) (assuming the instruction was factually appropriate and proceeding directly to harmless error analysis).

To establish clear error, "the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict." *Soto*, 301 Kan. 969, Syl. ¶ 10. Our analysis in *Williams* provides helpful guidance. The victim in that case had been stabbed multiple times in the head with a steak knife leading to a

charge of a severity level 4 aggravated battery. The victim received "'about a hundred stitches.'" 295 Kan. at 509. Despite the seriousness of that wound, we held the lesser included instruction for a severity level 7 aggravated battery was both legally and factually supported when the victim's testimony sent mixed signals to the jury because "[a]lthough she related that her wounds required a large number of stitches, she also minimized the pain she had suffered and said that she did not require any follow-up medical services other than to remove the stitches." 295 Kan. at 523. While the instruction would have been appropriate, we found the failure to give the instruction was not clearly erroneous:

> "[J]ust because we find that a rational jury *could* have found [the defendant] guilty of the lesser included offense does not necessarily mean that we believe that the jury *would* have convicted her of the lesser offense. Here, the evidence is such that we simply cannot be firmly convinced of which crime the jury might have chosen, as between the severity level 4 and severity level 7 versions. That degree of certainty, or perhaps more accurately, that degree of uncertainty falls short of what is required to meet the clearly erroneous standard. Accordingly, we affirm Williams' conviction." 295 Kan. at 523-24.

Here, we reach the same conclusion. As Fleig testified, "They just blew part of my toe off." Fleig also testified that he could see "blood gushing" from his foot and that he almost passed out from the shock. The State admitted into evidence photographs of Fleig's injury for the jury to view, clearly establishing the scope of the injury. Assuming that the district court should have instructed the jury on level 7 aggravated battery for inflicting "bodily harm," the defendant has not satisfied his burden to show the instruction would have made a difference in the verdict. Accordingly, we affirm Cooper's conviction.

Affirmed.

11