NOT DESIGNATED FOR PUBLICATION

No. 114,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KAMAL OMAR ARTEN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed August 18, 2017. Affirmed in part and dismissed in part.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, temporary assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before PIERRON, P.J., GREEN and HILL, JJ.


*Per Curiam*: A jury convicted Kamal Omar Arten of aggravated burglary, attempted aggravated robbery, and criminal threat. Arten appeals his attempted aggravated robbery conviction, arguing that the trial court committed reversible error when it failed to instruct the jury on attempted robbery as a lesser included offense of attempted aggravated robbery. Arten also argues that the trial court abused its discretion when it denied his departure motion. We disagree. The attempted robbery instruction was not factually appropriate, and this court lacks jurisdiction to consider Arten's argument concerning the denial of his departure motion. As a result, we dismiss Arten's appeal to

1

the extent it concerns his departure motion challenge and we affirm Arten's attempted aggravated robbery conviction.

The State charged Arten with the following: (1) one count of aggravated burglary, a severity level 5 person felony in violation of K.S.A. 2016 Supp. 21-5807(b); (2) one count of attempted aggravated robbery, a severity level 5 person felony in violation of K.S.A. 2016 Supp. 21-5420(b)(2); and (3) one count of criminal threat, a severity level 9 person felony in violation of K.S.A. 2016 Supp. 21-5415(a). All of these charges stemmed from events that allegedly transpired between Arten and Lena Rivera at a Kwik Shop gas station in Topeka, Kansas, on April 14, 2014.

At Arten's jury trial, testimony indicated that Arten had been living at the Topeka Rescue Mission until April 14, 2014, when he was expelled at 7:19 p.m. for alcohol consumption. Following his expulsion, Arten called a friend, Marvin Hall, to ask if he could spend the night at his place. Hall told Arten that he would have "Craig" or one of Craig's friends give him a ride to his place at some point that evening. Arten left the Rescue Mission and went to the Kwik Shop gas station where he continued to drink. Sometime around 7:45 p.m., Arten traded his coat with a man named Augustine Salters, who was walking home from work. Arten and Salters talked and drank "a beer or two" before Salters continued to walk home. Arten remained at the gas station. Shortly before 10:15 p.m., Rivera parked her car next to a pump at the gas station.

According to Rivera, as she went inside to pay for gas, she passed by a man who she later learned to be Arten. Rivera testified that Arten was standing at a pump close to the pump where she had parked her car. She testified that she could tell that Arten did not have a car because there was no car next to the pump he was standing by. She testified that she told Arten "hello" because she had seen him about a week earlier at the bar she owned. She explained, however, that she and Arten were not friends or even acquaintances; Arten had simply been to her bar before.

2

Rivera testified that once she paid for gas, she went back to the pump and put gas in her car. She testified that when she had completed pumping gas, she got into the driver's seat of her car. Arten immediately "jumped in" her car. Arten had opened her front passenger side door and attempted to sit down in her front passenger side seat. Rivera testified that as soon as Arten was in her car, Arten grabbed her purse. She explained that she reacted by grabbing her purse, and a struggle for her purse ensued. She asserted that during the struggle, Arten yelled, "I'll shoot you," which scared her, so she started screaming and honking her car horn. She testified that when she started screaming and honking her car horn, Arten punched her face and then fled.

Rivera asserted that Arten never asked her if she was his ride, never asked her if he could have a ride, and never asked her for money. She explained that one moment he was by a different pump and the next moment he was in her car grabbing her purse. She further explained that Arten's punch to her face cut the inside of her lip, scarring the inside of her mouth. She testified that because of the struggle to keep her purse, her wrists were also cut.

Arten's testimony conflicted with Rivera's testimony. According to Arten, when the woman, who he later learned to be Rivera, went into the gas station, she told him "hello" and "[w]ait a minute." Arten testified that based on those statements, he believed that Rivera had been sent by Hall to give him a ride to Hall's place. He testified that after she finished pumping gas into her car, he tried to sit down in the front passenger seat. He explained that as soon as he tried to sit down, however, Rivera started screaming and hitting him in the face with her purse. He asserted that because Rivera was hitting him with her purse, he grabbed the purse and "pushed back." He asserted this was when he realized that Rivera was "not [his] ride," so he "g[o]t out of there." Arten denied threatening to shoot Rivera, and he denied punching Rivera in her face.

3

Arten further testified that the afternoon and evening of April 14, 2014, he took his prescription medication and drank a pint of vodka and 22 beers. Arten testified that when he mixes his prescription medication with alcohol, he sometimes has difficulty remembering what he did while he was under the influence of the prescription medication and alcohol. He testified that this was why he could not recall anything about getting into Rivera's car during his April 15, 2014, interview with the police. He testified that he remembered the incident with Rivera about 2 to 4 weeks after his police interview.

In addition to Rivera's and Arten's testimony, Jeremy Hawkins and Doris Carlson, who were both at the gas station when the alleged crimes occurred, testified about what they saw. Hawkins testified that he saw a man sprint to Rivera's car and enter into Rivera's car through the front passenger door, with his legs hanging outside the passenger door. Hawkins testified that he knew a struggle was occurring inside the car because the man was kicking his legs. Carlson testified that as she walked towards the gas station, she saw a man near Rivera's car. When she turned to look in a different direction, she immediately heard Rivera scream and honk the horn of her car. Evidently, Carlson looked back at Rivera's car, at which point she realized that the man and Rivera were struggling inside Rivera's car. Both Hawkins and Carlson testified that after the man fled from Rivera's car, Rivera exited her car with blood on her face.

During the jury instruction conference, Arten did not request any lesser included offense instructions. Instead, Arten's trial attorney told the court that he was specifically not requesting "any lesser-included offenses" because Arten's defense was voluntary intoxication and mistake. Arten's attorney's closing argument focused on Arten's voluntary intoxication and mistake defense. Also, the jury was instructed on the voluntary intoxication and mistake as defenses.

The jury found Arten guilty on all counts. Before sentencing, Arten moved for a dispositional departure, or alternatively, a durational departure. The trial court denied the

4

departure motion and sentenced Arten to a controlling sentence of 126 months' imprisonment followed by 24 months' postrelease supervision. For each of his convictions, Arten received a presumptive Kansas Sentencing Guidelines Act (KSGA) grid sentence.

Arten timely appealed.

*Did the Trial Court Err in Instructing the Jury?*

Arten's primary argument on appeal is that the trial court erred by not giving an instruction on attempted robbery as a lesser included offense of attempted aggravated robbery. Arten recognizes that he did not request this instruction below. Nevertheless, Arten argues that the trial court's failure to give the instruction resulted in clear error, requiring reversal of his attempted aggravated robbery conviction. On the other hand, the State contends that although an instruction on attempted robbery as a lesser included offense of attempted aggravated robbery would have been legally appropriate, it was not factually appropriate. The State's argument hinges on (1) the fact Arten has not disputed the existence of Rivera's injuries and (2) the fact that Arten presented a voluntary intoxication defense.

When reviewing jury instruction challenges, appellate courts engage in a four-part analysis:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

5

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Yet, when a defendant has failed to raise the jury instruction challenge below, like Arten has done in this case, the fourth part of the analysis changes. In such instances, the defendant must establish that the failure to give the complained-about instruction was clearly erroneous. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The defendant will not be entitled to reversal based upon clear error unless he or she "'firmly convince[s] the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Here, because there is no dispute about whether Arten's argument is properly before this court under the clearly erroneous test or whether the attempted robbery instruction was legally appropriate, we skip to the third part of the jury instruction challenge analysis concerning factual appropriateness. To engage in this analysis, however, it is first important to review the statutes at issue in Arten's challenge.

Once again, Arten was charged and convicted of attempted aggravated robbery under K.S.A. 2016 Supp. 21-5420(b)(2). "An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2016 Supp. 21-5301(a). As it applies in this case, an aggravated robbery involves defendants "knowingly" taking property from a person or a person's presence while also "inflict[ing] bodily harm upon any person in the course of such robbery." K.S.A. 2016 Supp. 21-5420(a), (b)(2). The only difference between an aggravated robbery and a robbery is that an aggravated robbery requires the infliction of bodily harm. See K.S.A. 2016 Supp. 21-5420(a), (b)(2). Thus, as it concerns Arten's attempted robbery as a lesser

6

included offense jury instruction challenge, Arten has the burden of establishing that the facts of his case supported an instruction for a simple attempted robbery as opposed to an instruction for attempted aggravated robbery alone.

Next, Arten's entire defense during his trial was that what happened between him and Rivera was a misunderstanding caused by his extreme level of intoxication. K.S.A. 2016 Supp. 21-5205(b)—the voluntary intoxication defense provision—states:

> "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Hence, when defendants use voluntary intoxication to defend against any crime, their defense speaks to whether they had the "state of mind" required to commit the underlying crime. For an attempted crime, like Arten's attempted aggravated robbery crime, defendants' voluntary intoxication defense speaks to whether they "intended to" commit the underlying crime at issue.

Turning our attention back to the parties' arguments, we note that Arten's only argument regarding the factual appropriateness of the attempted robbery instruction as a lesser included offense is that his testimony supported that Rivera hurt herself while he "attempted to defend himself by pushing the purse back towards her." What Arten neglects to consider in making this argument, however, is his voluntary intoxication defense as well as his concession that Rivera suffered injuries.

Through his voluntary intoxication defense, Arten asserted that he could not have "intended to" commit any crimes because the entire incident between him and Rivera was a misunderstanding created by his extreme level of intoxication. Moreover, as part of his

7

defense, Arten conceded that he had grabbed Rivera's purse. His concession came through his testimony that he pushed Rivera's purse towards her in an effort to prevent her from hitting him in the face with the purse. The effect of this testimony was that Arten gave the jury an explanation why Rivera had injuries *and* an explanation why he was not guilty of attempted aggravated robbery. In fact, Arten's trial attorney even told the jury during closing arguments that under the circumstances of Arten's drunken misunderstanding, it was "reasonable" to conclude that Rivera could have been "hit in the mouth with either her own hand or [Arten's]."

Thus, there are two key takeaways from Arten's defense below. First, his entire defense was whether he had the requisite state of mind to commit any crime against Rivera. Second, the existence of Rivera's injuries was not in dispute. In turn, the only issue for the jury to decide was whether Rivera was hurt during a misunderstanding between her and Arten resulting from his drunken stupor or whether Rivera was hurt during an attempt by Arten to take Rivera's purse from her person. The manner in which Arten presented his defense did not give the jury the option of finding that Rivera had not been injured during whatever transpired between her and Arten. Thus, as the State argues in its brief, Arten was either "guilty of [attempted] aggravated robbery or nothing." Consequently, an attempted robbery instruction was not factually appropriate.

Yet, even if we assume that the attempted robbery instruction was factually appropriate, Arten has failed to establish that the failure to give this instruction was clear error. Arten's argument is that if the jury had been given the attempted robbery instruction, there would have been "a real possibility that the jury may have found that the cause of Rivera's injury was the result of her own actions in striking [him] with her purse and that [he] lacked the intent to take her purse by striking her." Arten asserts that the instruction would have allowed the jury to "accept [his] credibility with respect to certain components of his defense, but perhaps not his entire recollection of the situation."

8

Nevertheless, as emphasized by the State in its brief, the phrasing of Arten's arguments plainly shows that he has failed to meet the clearly erroneous test. For instance, Arten asserts that if the jury had been given the attempted robbery instruction there would have been "a real possibility" of a different jury verdict. Nonetheless, to establish clear error, Arten must "'firmly convince [this] court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *Cooper*, 303 Kan. at 771. Arten's argument that there would have been "a real possibility" of a different verdict but for the failure to give the instruction falls far short of "firmly convincing" this court that the jury's verdict would have been different as required under the clearly erroneous test.

Furthermore, the only evidence supporting Arten's voluntary intoxication defense was his own testimony that what transpired was a misunderstanding caused by his extreme intoxication. As indicated by the jury's guilty verdicts, however, it is readily apparent that the jury rejected Arten's voluntary intoxication defense. In consequence, this court can safely conclude that the jury found Arten's version of events, including any testimony indicating that Rivera's injuries were somehow the result of her own actions, unbelievable. Because the jury found Arten's version of events not credible, there is no reason to believe that the jury would have reached a different verdict had it been given an attempted robbery instruction. As a result, Arten's argument fails.

*Did the Trial Court Err in Sentencing?*

Arten's next argument is that the trial court erred when it denied his departure motion at sentencing. Arten alleges that he provided the trial court with substantial and compelling reasons to depart his sentence either dispositionally or durationally. Based upon this belief, Arten argues that the trial court abused its discretion by denying his motion. The State responds that this court lacks jurisdiction to consider Arten's argument

9

because he received presumptive KSGA grid sentences for each of his convictions. When a party challenges the existence of jurisdiction, this court has unlimited review. *State v. Rizo*, 304 Kan. 974, 984, 377 P.3d 419 (2016).

The State is correct in that Arten received presumptive KSGA grid sentences for each of his convictions. The trial court sentenced Arten to standard-box KSGA grid sentences for both his aggravated burglary and criminal threat sentences. Additionally, the trial court sentenced Arten to the low-box KSGA grid sentence for his attempted aggravated robbery conviction.

The State is also correct in that in almost all circumstances, appellate courts lack jurisdiction to review presumptive KSGA grid sentences. This court has previously held that appellate courts are "without jurisdiction to consider any sentence within the presumptive sentencing range for the crime." *State v. Grebe*, 46 Kan. App. 2d 741, Syl. ¶ 5, 264 P.3d 511 (2011); see *Rizo*, 304 Kan. at 984. For example, in the *Grebe* case, this court explained that it was without jurisdiction to consider Grebe's arguments why the trial court should have granted his motion for dispositional or durational departure because Grebe had been sentenced to the presumptive KSGA sentence for his crime. *Grebe*, 46 Kan. App. 2d at 745. A very limited exception to this rule exists, but only when a defendant argues that the trial court failed to understand its sentencing authority. See *State v. Warren*, 297 Kan. 881, 885, 304 P.3d 1288 (2013).

Here, however, Arten has in no way argued that the trial court failed to understand its sentencing authority. As a result, any argument he may have had about the trial court failing to understand its sentencing authority has been abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding that issues not briefed are deemed waived and abandoned.) In turn, Arten's case and argument is no different than Grebe's case and argument. Arten asserts that the trial court should have departed his sentence either dispositionally or durationally because he believes he provided substantial and

compelling reasons to do so. Yet, because the trial court sentenced him to presumptive grid sentences under the KSGA, this court lacks jurisdiction to consider his departure sentencing challenge. Consequently, Arten's argument fails.

Affirmed in part and dismissed in part.