NOT DESIGNATED FOR PUBLICATION

No. 116,575

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK ALVIS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed December 22, 2017. Affirmed.

*James Crux*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Megan Williams*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.

PER CURIAM: Mark Alvis appeals his jury trial conviction for aggravated assault, criminal possession of a firearm by a convicted felon, and battery. He claims the district court erred in admitting evidence—pursuant to K.S.A. 2016 Supp. 60-455(b)—of prior acts involving beatings of N.J., his girlfriend. He also claims the district court gave an incomplete limiting instruction for the K.S.A. 2016 Supp. 60-455(b) evidence and the district court erred by not instructing the jury of a lesser included charge of simple assault.

1

The record reflects the district court failed to do a complete analysis on the record of the K.S.A. 2016 Supp. 60-455(b) evidence to determine its probative value versus the prejudicial effect. Based on our review of the record, this error was harmless given the overwhelming nature of the evidence against Alvis. The second issue involves the district court's failure to properly limit how the K.S.A. 2016 Supp. 60-455(b) evidence could be used through an instruction. However, Alvis agreed to the instruction, and if error, it was invited error. The final issue involves the failure to give the lesser included charge of assault, which Alvis did not request. Therefore, we look for clear error on this point and we find none. We are convinced the lesser included instruction would not have made a difference in the outcome of the jury verdict. We affirm.

FACTS

Alvis and N.J. were in an on-again, off-again dating relationship. The relationship terminated in May 2015. A few days prior to March 26, 2016, Alvis began texting N.J., threatening to break her things and injure her. At approximately 3 a.m. on March 26, 2016, N.J. awoke to loud knocking at the door. When she answered the door, Alvis pushed his way into N.J.'s apartment while in possession of a gun, began beating her, and threatening to kill her. Eventually, N.J. calmed Alvis down and he allowed her to use the bathroom. While in the bathroom, N.J. contacted police who arrived shortly thereafter and arrested Alvis.

The State charged Alvis with aggravated assault, criminal possession of a firearm by a convicted felon, and battery. The State moved for admission of prior crimes or bad acts. At the pretrial motion hearing, the district court ruled:

"[I]f [N.J.] takes the stand and begins to minimize and recant or discredit her prior earlier statements about what happened, which would be inconsistent with the earlier reporting and the injuries noted, then I think it triggers then the ability of the State to offer prior

2

instances of his bad acts that have been reported . . . to law enforcement . . . to show that there has been a history of this, to explain the witness's testimony."

At trial, N.J. testified she dated Alvis on and off for approximately three and one-half years. The prosecutor asked N.J. to describe the relationship and she indicated, "after a while, it was just bad." Then the following exchange occurred:

"Q. Okay. It was bad? How did it get bad?

"A. Well, he just—he just doesn't really have very good anger management control, and he would get mad over nothing at all and . . .

"Q. Okay. Did—was your relationship ever violent?

"A. Yes.

"Q. Can you describe that violence?

"A. Like in full detail?

"Q. Yes. Please.

"A. Well, I didn't—well, there wasn't too many days I went without a black eye or he ended up stabbing me and (indicating)—

"Q. So you said there wasn't too many days you went without a black eye?"

Alvis objected based on the district court's prior ruling and renewed his objection to the admission of K.S.A. 2016 Supp. 60-455(b) evidence. The district court overruled the objections and allowed the answers to stand. The line of questioning continued with N.J. explaining Alvis usually hit her with his fists, but once used a bat, and previously used a knife to stab her.

N.J. then testified to the events of March 26, 2016. She told the jury she had taken a Xanax and awoke about 3 a.m. to a loud banging on her front door. She answered the door and Alvis hit her in the face with a pistol and began beating her. She indicated Alvis lost the gun, began strangling her, and said he was going to kill her. Eventually, Alvis retrieved the gun. He calmed down; N.J. went to the bathroom and texted police her address for help.

After N.J. notified police, she asked Alvis to leave the apartment. He pushed her into the kitchen and put the gun to her head. Police eventually arrived, and N.J. let them in. She told them Alvis hid a gun in the kitchen cabinet and he was upstairs. N.J. testified she was scared of him that night. Then the following exchange occurred:

> "Q. So you were scared of him that night. Are you scared of him today?
> "A. If I was to see him, me and him alone in a room, yeah.
> "Q. So if you were alone in a room with him, you'd be scared of him? Is that —
> "A. (Nods.) Ever since the day he stabbed me, yeah.
> . . . .
> "Q. Okay. So the main reason that you broke up with him is because he stabbed you?
> "A. Well, that and a lot of other things at the time. But I told him when I went to visit—he went to jail after he stabbed me on an unrelated thing, and—but when I went to visit him, I just cried and told him I couldn't be around him again, I was scared.
> "Q. Okay. What did he stab you with?
> "A. A knife.
> "Q. Okay. And do you have any scars from that?
> "A. Yeah. When he tried to stab me in my head, I was I was down on the ground, and he tried to stab me in my head, and I put my arm up (indicating) and . . .
> "Q. Did you have to get stitches from that?
> "A. Yeah. But I waited three days because I didn't know what to tell them."

N.J. testified at the trial that her testimony was different during the preliminary hearing because she was scared of Alvis and the look in his eyes.

After N.J. finished testifying, the district court excused the jury for lunch and briefly discussed the K.S.A. 2016 Supp. 60-455(b) issue with the parties. The court indicated, based on *State v. Humphrey*, 258 Kan. 351, 362-63, 905 P.2d 664 (1996), evidence that the victim of an aggravated assault and the defendant frequently argued and the defendant abused her was admissible to establish a relationship and continuing course

4

of conduct. The district court stated it was admitting the evidence under that theory as well as for motive. It continued:

> "Also, some of the prior instances of things that happened to her and then she not reporting becomes part of motive or plan, being able to come and be involved in some threatening behavior and not concerned that it's going to be reported. So I think that comes into—under 60-455 under a little different theory that was presented, I think, last week."

Officer Ward Richards and Officer Ted Glass testified they were dispatched to N.J.'s house. Upon arrival, they heard yelling through the door. N.J. answered the door and whispered Alvis was upstairs. She also told them there was a gun in the kitchen cabinet. The State introduced the gun as evidence. However, Officer Richards acknowledged no one sent the gun to the KBI for testing or fingerprint analysis.

The State rested and Alvis opted to rest without presenting any evidence. During the final jury instruction conference, the district court asked if Alvis would like a limiting instruction on the K.S.A. 2016 Supp. 60-455(b) evidence, and Alvis answered affirmatively. The State suggested language for an instruction, and Alvis' counsel indicated he was "fine with" the proposed limiting instruction.

The jury convicted Alvis of all three charges: aggravated assault, criminal possession of a firearm by a convicted felon, and battery. Alvis was sentenced to 31 months' imprisonment for aggravated assault and 9 months' imprisonment for criminal possession of a firearm. Those two sentences ran consecutively. On the misdemeanor battery charge, Alvis was sentenced to 6 months in jail concurrent to his sentences for aggravated assault and criminal possession of a firearm.

ANALYSIS

*Probative Value of Evidence Versus the Prejudicial Effect*

Alvis argues the district court erred when it admitted evidence of his prior bad acts. He contends the evidence was not material because Alvis and N.J.'s prior relationship had no bearing on this case and the prejudicial effect outweighed any probative value. Alvis also notes the district court failed to weigh the probative value against the prejudicial effect on the record. Further, he argues the erroneous admission of prior bad-act evidence required reversal because it was not harmless.

Under K.S.A. 2016 Supp. 60-455(b), evidence a person committed a prior crime or civil wrong is admissible "when relevant to prove some other material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 60-401(b) defines relevant evidence as evidence having "'any tendency in reason to prove any material fact.' [Citation omitted.]" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). This definition encompasses two elements: a materiality element and a probative element. Standards of review for each element vary. The appellate standard of review for materiality is de novo. *Page*, 303 Kan. at 550. An appellate court reviews probativity for an abuse of discretion. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

> "We hereby state unequivocally that the list of material facts in K.S.A. 60-455 is exemplary rather than exclusive. It may be that other crimes and civil wrongs evidence is relevant and admissible to prove a material fact other than the eight listed. Should this be a district judge's determination; however, *the evidence must be subjected to the same sort of explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, and prophylactic limiting instruction we have required when any other K.S.A. 60-455 evidence is admitted.*

"This enables our return to sensible application of K.S.A. 60-455 and puts an end to the practice of admission of other crimes and civil wrongs evidence independent of it. . . . Other crimes and civil wrongs evidence that passes the relevance and prejudice tests we have set up and is accompanied by an appropriate limiting instruction should always have been admissible, even if the particular material fact on which it was probative was not explicitly set forth in the statute. . . . Henceforth, admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455.

"Under this reinvigorated reading to K.S.A. 60-455, *should a district judge neglect to apply the safeguards we have outlined to any other crimes or civil wrongs evidence, we will find error.* But we also hereby unequivocally resolve the second problem that has plagued our cases in this area: We explicitly recognize that the admission of K.S.A. 60-455 evidence without the explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, or prophylactic limiting instruction is not inevitably so prejudicial as to require automatic reversal. On the contrary it may be harmless." (Emphasis added.) *State v. Gunby*, 282 Kan. 39, 56-57, 144 P.3d 647 (2006).

Here, the district court did not explicitly conduct a relevance inquiry or discuss the prejudicial effect of the evidence when it initially admitted the evidence of Alvis' prior bad acts. After N.J.'s testimony, the district court discussed its ruling and found the evidence admissible to show motive, plan, or intent. The State suggested it was also relevant to show the nature of the relationship and marital discord.

However, the district court failed to particularize its weighing of the probative value and the prejudicial effect of the evidence. The State argues the district court need only determine the probative value outweighed the prejudicial effect. It contends an explicit, on the record, determination is unnecessary. This argument ignores the language in *Gunby*—which we are duty bound to follow—requiring a particularized weighing of probative value and prejudicial effect. Since the district court did not particularize its weighing of the probative value against the prejudicial effect, the district court erred in admitting evidence of Alvis' prior bad acts. However, this does not end the analysis.

7

*Gunby* instructs the erroneous admission of prior bad acts evidence is subject to a harmless error analysis pursuant to K.S.A. 2016 Supp. 60-261. 282 Kan. at 57. In *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), the Kansas Supreme Court held that to find an error harmless under K.S.A. 2016 Supp. 60-261, a Kansas court must be able to declare the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." The party benefiting from the error always bears the burden of proving it harmless under this standard. See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016). Where, as here, an error implicates a statutory but not a federal constitutional right, the party benefiting from the error must persuade this court there is no reasonable probability the error affected the trial's outcome in light of the entire record for it to be deemed harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

In *Gunby*, the Kansas Supreme Court recognized at least three types of prejudice resulting from the admission of prior bad acts evidence:

> "'First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed.' [Citation omitted.]" *Gunby*, 282 Kan. at 48-49.

The State argues reversal is unnecessary because any error was harmless. Its argument is persuasive. While N.J.'s preliminary hearing testimony differed dramatically from her trial testimony, she also explained why. She told the jury the preliminary hearing was the first time she had seen Alvis since March 26, 2016, and she was afraid of him. She told the jury her trial testimony was truthful. In addition, N.J.'s trial testimony was consistent with the version of events she described to police officers on March 26, 2016. Furthermore, though N.J. admitted she suffered from mental health issues

8

including hallucinations, she told the jury she was not hallucinating on March 26th. The record also reflects two photographs were admitted into evidence of N.J.'s injuries and the gun. We find there is no reasonable probability the district court's failure to particularize its weighing of the probative value of the evidence versus the prejudicial effect of Alvis' prior bad acts affected the trial's outcome in light of the entire record. The error was harmless.

*No Objection to the Limiting Instruction*

Alvis contends the district court clearly erred because its limiting instruction did not inform the jury it could only consider evidence of Alvis' prior bad acts in relation to the aggravated assault charge. To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

However, a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Under the invited error doctrine, a defendant cannot challenge an instruction on appeal, even as clearly erroneous under K.S.A. 2016 Supp. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial. *State v. Peppers,* 294 Kan. 377, 393, 276 P.3d 148 (2012).

Here, Alvis' counsel agreed to the wording of the instruction on the record. At the instruction conference, the district court presented four options. The State suggested the first of those options, which stated: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's motive and continuing course of conduct." Then the district court asked Alvis' counsel what he would suggest with regard to the 60-455 instruction. Alvis' counsel replied: "Well, I would just suggest that we stick to the pattern instructions as close as possible, and I'm—I'm fine with the— the first proposed instruction on this list." Clearly, his counsel agreed on the record to the wording of the jury instruction. Given the totality of the evience, we are not convinced this instruction was given in error, but if it was, Alvis invited the error and cannot challenge the instruction on appeal. The error was not clearly erroneous as we are not convinced the giving of a different, more restrictive instruction would have made a difference in the verdict.

*Assault is a Lesser Included Offense of Aggravated Assault*

Alvis' final contention is the district court should have given a jury instruction on simple assault as a lesser included instruction of aggravated assault. He contends there was a real possibility the jury would have convicted him of simple assault instead of aggravated assault if the district court had properly instructed the jury.

The State asserts the district court did not err because a simple assault instruction was not factually appropriate. It also argues that, even if the instruction was factually appropriate, Alvis has not established clear error.

When a party challenges the failure to give a lesser included offense instruction, appellate courts apply the analytical framework for jury instruction issues. The steps in this framework are: (1) determining whether the appellate court lacks jurisdiction to

10

consider the issue or the party failed to preserve the issue; (2) determining the merits of the claim as to whether an error occurred during the trial; and (3) determining whether the error was harmless or requires reversal. *State v. Dupree*, 304 Kan. 377, 391-92, 373 P.3d 811 (2016).

The trial court shall instruct the jury on lesser included offenses where there is some evidence to reasonably justify a conviction of the lesser included offense. K.S.A. 2016 Supp. 22-3414(3). This duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014).

*Factually appropriate?*

Failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2016 Supp. 22-3414(3). See *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). When evaluating whether a lesser included instruction is factually appropriate in the individual case, the standard of review is: "If, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016). But see *State v. Charles*, 304 Kan. 158, 165, 372 P.3d 1109 (2016) (considering State's request, after close of evidence, for an expansive lesser included offense instruction).

The State argues the assault lesser included instruction was not factually appropriate. For support, it cites *State v. Sutherland*, 248 Kan. 96, 102, 804 P.2d 970 (1991). However, *Sutherland* is distinguishable. In *Sutherland*, the defendant was convicted of aggravated robbery with a deadly weapon. On appeal, he contended the district court should have given a jury instruction on robbery as a lesser included offense.

11

The Kansas Supreme Court held the failure to give an instruction on robbery was not error because it was undisputed Sutherland's accomplice had displayed a knife during the robbery. 248 Kan. at 103. Here, Alvis' use of a gun was disputed. N.J. testified Alvis had a gun. However, N.J. also acknowledged that, while testifying at the preliminary hearing, she denied ever seeing Alvis with a gun. Unlike in *Sutherland*, whether Alvis had a gun when he assaulted N.J. was disputed by her conflicting testimony. The State's reliance on *Sutherland* is misplaced.

A simple assault instruction was factually appropriate. Assault is "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2016 Supp. 21-5412(a). Here, N.J. testified Alvis began strangling her and told her he was going to kill her. N.J. testified Alvis did not have a gun at this time since it had landed behind N.J.'s couch and Alvis stopped strangling her when he realized he lost the gun. This evidence would reasonably support a conviction for assault. An instruction on assault as a lesser included offense of aggravated assault was factually appropriate.

### *Legally appropriate?*

Since all of the elements of simple assault are included in the elements of aggravated assault with a deadly weapon, simple assault is a lesser included offense of aggravated assault with a deadly weapon. *State v. Nelson*, 224 Kan. 95, 97, 577 P.2d 1178 (1978). As such, an instruction on simple assault was legally appropriate.

### *Clearly erroneous?*

Since we found the instruction was both legally and factually appropriate, failing to give the instruction was error. As a result, we must now determine whether it was clearly erroneous to not give the lesser included offense instruction. Alvis has the burden to show "'the failure was clearly erroneous, *i.e.*, the defendant must firmly convince the

12

appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016).

Alvis argues "there is a real possibility" the jury would have convicted him of assault instead of aggravated assault had it been instructed on assault. He contends N.J. suffered from paranoia, delusions, hallucinations, and had previously testified Alvis did not have a gun when he entered the home. He also asserts there was no physical evidence he ever touched the gun. However, his arguments are not persuasive.

While N.J. admitted she suffered from paranoia, delusions, and hallucinations, she also testified she was not hallucinating when Alvis put the gun to her head. Further, N.J. explained she was afraid of Alvis, which was why she previously testified he did not have a gun. She told the jury her statements to the police and her testimony at trial were accurate. Finally, the jury convicted Alvis of criminal possession of a firearm by a convicted felon. It clearly believed N.J. when she testified Alvis had a gun. He has not provided any evidence to suggest the jury believed her testimony that he had a gun, but not her testimony he put the gun to her head and threatened her with it. Alvis has not met his burden to show the lesser included instruction of simple assault would have made a difference in the verdict. It was not clearly erroneous for the district court to not give the lesser included instruction of simple assault under the facts of this case.

Affirmed.