NOT DESIGNATED FOR PUBLICATION

No. 116,951

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHAUA L. BACK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed June 8, 2018. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and STUTZMAN, S.J.

PER CURIAM: Joshaua L. Back appeals his jury trial convictions for second-degree murder and theft, raising three errors involving the jury instructions presented to the jury. First, he claims it was error not to give his requested instruction on voluntary manslaughter as a lesser included instruction to second-degree murder because he had an honest belief he needed to defend himself. Second, he claims it was error not to give his requested instruction on self-defense. Finally, he argues the district court erred by not sua sponte instructing the jury on involuntary manslaughter by commission of a lawful act in an unlawful manner as an additional lesser included instruction to second-degree murder.

1

As more fully set out below, based on our standard of review on each of the instructions, we find the instructions were not factually appropriate and there was no error. We affirm.

FACTS

In the early morning hours of May 25, 2015, law enforcement received a report of a stabbing near a Lawrence restaurant. Upon arrival, employees pointed the officer toward Tracy Dean Lautenschlager, who was sitting on the curb. Blood gushed from underneath a shirt Lautenschlager held against his neck. Lautenschlager later died.

Officers followed Lautenschlager's blood trail to the home of Shawna Radcliffe, who reported someone stole her truck. Sometime later, Back became a suspect and was charged with intentional second-degree murder for the death of Lautenschlager and for the theft of Radcliffe's truck.

At trial, multiple witnesses testified to the use and consumption of both methamphetamines and marijuana by everyone at Radcliffe's house, including Back. Several of the witnesses also went to and from Sean McCawley's house where more methamphetamines were consumed by Back and the witnesses.

Jeremy McCarty testified that when Lautenschlager, Back, and McCawley returned to Radcliffe's house from McCawley's house, the mood was tense. When McCarty later drove Back to McCawley's house, Back seemed aggravated. Shortly before McCarty drove away from McCawley's, Back returned to the vehicle and picked up a knife off of the dashboard.

After Back was arrested, law enforcement interviewed him for about four hours. They videotaped the interview and the jury saw a redacted version of it. Back told the

2

officers several versions of the events after he left McCawley's house with Lautenschlager. In the final version, Back said he and Lautenschlager went to a gas station, Lautenschlager left, and McCarty picked up Back at the gas station and gave him a ride to Radcliffe's house. As Back was being dropped off at Radcliffe's house, Lautenschlager arrived and they argued briefly. Back began walking down the sidewalk to the back door of Radcliffe's house when Lautenschlager followed him. An unidentified white man emerged from behind either bushes or the back of the house and Lautenschlager pushed Back. He believed the two wanted to rob him. Back did not indicate Lautenschlager or the unidentified man had weapons or were saying or doing anything threatening. Back told the officers he grabbed a knife from his waistband, swung it upward, and took off running.

Later that morning, Back showed up at McCarty's house and told McCarty, "'I sliced that nigger,'" although Lautenschlager was a Caucasian male, and pantomimed blood squirting from his neck. McCarty testified Back was calm and collected, "[a]lmost happy," and smiling as he said this.

At the jury instruction conference, Back requested an instruction on voluntary manslaughter as a lesser included offense to his second-degree murder charge based on an honest but unreasonable belief that force was justified. He also requested a self-defense instruction. The district court declined to give Back's requested instructions. He did not request an involuntary manslaughter instruction.

The jury convicted Back of intentional second-degree murder and theft. He appeals.

ANALYSIS

On appeal, Back raises three jury instruction issues. He contends the district court erred when it declined to give an instruction on the lesser included offense of voluntary manslaughter because he had an honest belief he needed to defend himself. Back also contends the district court erred when it declined to give his requested self-defense instruction. Finally, Back contends the district court erred because it failed to sua sponte give an instruction on the lesser included offense of attempted involuntary manslaughter by commission of a lawful act in an unlawful manner.

*No error to deny Back's request for a voluntary manslaughter instruction on an honest but reasonable belief use of deadly force was justified.*

When the giving of or failure to give a lesser included offense instruction is challenged on appeal, appellate courts apply the analytical framework for jury instruction issues. The steps in this framework are (1) determining whether the appellate court lacks jurisdiction to consider the issue or the party failed to preserve the issue; (2) determining the merits of the claim as to whether an error occurred during the trial; and (3) determining whether the error was harmless or requires reversal. *State v. Dupree*, 304 Kan. 377, 391-92, 373 P.3d 811, *cert. denied* 137 S. Ct. 310 (2016).

First, Back preserved this issue by requesting an additional instruction on voluntary manslaughter. In addition, as Back requested, voluntary manslaughter would instruct the jury to consider whether he had an honest but unreasonable belief use of deadly force was justified. As such, the requested instruction is a lesser included offense of second-degree murder, so the jury instruction was legally appropriate. See *State v. Hayes*, 299 Kan. 861, 864, 327 P.3d 414 (2014).

4

Even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2017 Supp. 22-3414(3). "If, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016).

Under the instruction Back requested and was denied by the district court, voluntary manslaughter is knowingly killing another person "upon an unreasonable but honest belief that circumstances existed that justified the use of deadly force under K.S.A. 2017 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto." K.S.A. 2017 Supp. 21-5404(a)(2). These statutes refer to the perfect defenses of defense of persons, dwellings, and property other than dwellings, respectively. The voluntary manslaughter analysis does not rely only on a defendant's subjective honest belief; instead, "the circumstances which the defendant honestly believed to exist must have been such as would have supported" a perfect defense under K.S.A. 2017 Supp. 21-5222, 21-5223, or 21-5225. See *State v. Roeder*, 300 Kan. 901, 923, 336 P.3d 831 (2014).

K.S.A. 2017 Supp. 21-5221(a)(1) defines "[u]se of force" as:

"(A) Words or actions that reasonably convey the threat of force, including threats to cause death or great bodily harm to a person; (B) the presentation or display of the means of force; or (C) the application of physical force, including by a weapon or through the actions of another."

Similarly, "[u]se of deadly force" is "the application of any physical force described in paragraph (1) which is likely to cause death or great bodily harm to a person." K.S.A. 2017 Supp. 21-5221(a)(2).

5

Back argues an instruction on voluntary manslaughter was appropriate because he believed Lautenschlager and the unidentified individual were going to rob him. He contends with the evidence, in the light most favorable to him, a jury could conclude he had an honest belief he was about to be robbed or killed. Thus, he contends K.S.A. 2017 Supp. 21-5225 allowed him to use necessary force—including deadly force—to prevent the robbery. K.S.A. 2017 Supp. 21-5225 states:

> "A person who is lawfully in possession of property other than a dwelling, place of work or occupied vehicle is justified in the use of force against another for the purpose of preventing or terminating an unlawful interference with such property. Only such use of force as a reasonable person would deem necessary to prevent or terminate the interference may intentionally be used."

A reasonable person could not find the circumstances justified the use of deadly force. Back believed Lautenschlager and the unidentified man from the bushes planned to rob him. Back's belief appears to be honest but unreasonable. Thus, the question is whether circumstances existed that would have supported a perfect defense of defense of property.

Those circumstances do not exist. Back said Lautenschlager pushed him but identified no specific threats Lautenschlager made. Though Back did suggest Lautenschlager was "talking shit," Back never explained what that meant. Back did not suggest either Lautenschlager or the unidentified man had a weapon. In fact, Lautenschlager had a cell phone or something square in his left hand. The unidentified man did not do or say anything threatening. Furthermore, the video of Back's interview shows the unidentified man was more than 5 feet away when Back swung his knife at Lautenschlager. Neither Lautenschlager nor the unidentified man said they intended to rob him, threatened him in any way, or were carrying weapons. A reasonable person would not determine deadly force was necessary to prevent the interference with Back's property. The instruction was not factually appropriate.

6

Back briefly suggests he believed he was about to suffer death or serious bodily injury at the hands of Lautenschlager and the unidentified man. Yet he does not argue the voluntary manslaughter instruction was appropriate based on an imperfect application of defense of self. A point raised incidentally in a brief and not argued therein is also deemed abandoned. *State v. Sprague,* 303 Kan. 418, 425, 362 P.3d 828 (2015). Back has abandoned this issue.

*The evidence was insufficient for a self-defense instruction.*

K.S.A. 2017 Supp. 21-5222 states:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person."

Back argues the district court erred when it refused to instruct the jury on self-defense. Since the jury heard evidence Back believed he was about to be robbed or killed, Back contends he had the right to use deadly force to defend himself and the jury should have been instructed to consider self-defense. Our standard of review of this issue was discussed in the previous section.

Back requested the district court instruct the jury on his right to use deadly force. He preserved this issue for appeal. Back argues the self-defense instruction was legally appropriate. The State contends it was not.

7

"A legally sufficient claim of self-defense requires evidence supporting both (1) a subjective belief on the part of the defendant that (a) the use of unlawful force is imminent and (b) the use of force is necessary and (2) an objective determination that a reasonable person would have come to the same conclusions." *State v. Andrew*, 301 Kan. 36, 45, 340 P.3d 476 (2014).

Here, there is evidence supporting Back's subjective belief that the use of unlawful force was imminent and his use of force was necessary: Back believed Lautenschlager and the unidentified individual were about to rob him. The question then, is whether an objectively reasonable person would have also determined the use of unlawful force was imminent and the use of deadly force was necessary.

We find *State v. Gayden*, 259 Kan. 69, 910 P.2d 826 (1996), is analogous, although Back argues it is distinguishable. In *Gayden*, the Kansas Supreme Court held the district court did not err when it refused to give a self-defense instruction because a reasonable person would not have believed Gayden's shooting of the victim was necessary to defend against the victim's imminent use of unlawful force. 259 Kan. at 84. The court stated:

> "Even viewed in the light most favorable to defendant, evidence which would support a reasonable belief that deadly force was necessary to defend himself against Murray's imminent use of unlawful force is missing. There was no evidence that Murray verbally threatened to seriously harm defendant, nor was there any evidence that Murray might be inclined to or able to make good on such a threat. There was no evidence that Murray was armed or displayed a weapon. There was no evidence that Murray did more than strike one blow against defendant with his hand. There is evidence that Nicole was positioned between defendant and Murray when Murray struck at defendant, but there is absolutely no evidence that defendant's reaction was an attempt to defend her against Murray's imminent use of unlawful force." 259 Kan. at 84.

8

Back acknowledges the factual similarities with *Gayden*. However, he contends the "notable difference" which "changes the analysis" is the addition of another assailant. He contends this additional factor means a reasonable person would conclude several attackers would inflict great bodily harm unless he took defensive action.

Back's argument is flawed. Even with another assailant, as in *Gayden*, there was no evidence either Lautenschlager or the unidentified man orally threatened him. Back did not identify any specific threats Lautenschlager made. Though Back did suggest Lautenschlager was "talking shit," Back never explained what that meant. The unidentified man did not do or say anything threatening. In fact, the video of Back's interview shows the unidentified man was more than 5 feet away when Back swung his knife at Lautenschlager. As in *Gayden*, neither Lautenschlager nor the unidentified man had a weapon; Lautenschlager had a cell phone or a GPS device in his hand. And while Back suggested Lautenschlager pushed him once from behind, as in *Gayden*, there was no evidence of any other contact between Lautenschlager and Back. As in *Gayden*, a reasonable person could not find the use of unlawful force was imminent and the use of deadly force was necessary. Back's requested self-defense instruction was not legally appropriate. Similarly, based on these facts, the instruction was not factually appropriate either. The district court did not err when it refused to give the requested self-defense instruction.

*The district court had no obligation to sua sponte instruct on an alternative involuntary manslaughter by commission of a lawful act in an unlawful manner.*

When the giving of or failure to give a lesser included offense instruction is challenged on appeal, appellate courts apply the analytical framework for jury instruction issues. The same framework is applied as discussed in the two previous sections as to whether the instruction was legally and factually appropriate.

9

Here, the district court *did* instruct on involuntary manslaughter under K.S.A. 2017 Supp. 21-5405(a)(1)—the killing of a human being committed "[r]ecklessly."

The district court did not instruct, and Back did not request an instruction, on involuntary manslaughter under K.S.A. 2017 Supp. 21-5405(a)(4)—the killing of a human committed "during the commission of a lawful act in an unlawful manner." When the instruction was not requested before the district court, this court reviews for clear error. K.S.A. 2017 Supp. 22-3414(3). Thus, Back has the burden of firmly convincing this court the giving of the instruction would have made a difference in the verdict. *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016).

Using excessive force while defending oneself can satisfy the "lawful act in an unlawful manner" element of involuntary manslaughter. See *State v. Houston*, 289 Kan. 252, 272-73, 213 P.3d 728 (2009). Involuntary manslaughter is a lesser included offense of second-degree murder. See *State v. Bridges*, 297 Kan. 989, 1021, 306 P.3d 244 (2013). As a result, the instruction was legally appropriate.

Even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2017 Supp. 22-3414(3); *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). When evaluating whether a lesser included instruction is factually appropriate in the individual case, the standard of review is: "If, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *Fisher*, 304 Kan. at 258.

In *State v. Bell*, 266 Kan. 896, 916, 975 P.2d 239 (1999), the Kansas Supreme Court explained the excessive force rationale for involuntary manslaughter:

"The excessive force rationale is premised on the basis that a person is justified in the use of force against an aggressor when and to the extent it appears to the person and he or she reasonably believes that such conduct is necessary to defend himself or herself . . . against such aggressor's imminent use of unlawful force."

As discussed, Back's belief that unlawful force was imminent and he needed to use force to defend himself was not reasonable. Again, there is no evidence the unidentified man threatened Back in any way. Though Back did suggest Lautenschlager was "talking shit," Back did not identify any specific threats Lautenschlager made. Neither Lautenschlager nor the unidentified man had a weapon, though Back did suggest Lautenschlager shoved him. In addition, the video of Back's interview shows the unidentified man was more than 5 feet away when Back swung his knife at Lautenschlager. Based on these facts, Back's belief that unlawful force was imminent and the use of force was necessary to defend himself was unreasonable. Thus, Back did not lawfully defend himself, and an instruction for involuntary manslaughter based on a lawful act committed in an unlawful way was not factually appropriate. The district court's failure to give this instruction was not clear error.

Affirmed.