NOT DESIGNATED FOR PUBLICATION

No. 125,191

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH P. WHITEKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed March 22, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., PICKERING, J., and TIMOTHY G. LAHEY, S.J.

PICKERING, J.: This is a direct appeal from Joseph P. Whiteker's jury trial which resulted in two drug convictions. He challenges the voluntariness of his post-*Miranda* statements and asserts the district court's failure to provide a limiting instruction regarding his statements of prior drug use resulted in clear error. Finding his statements were voluntary and no clear error when the jury received the case without a limiting instruction, we affirm.

1

Officers David Howard and Joey Husen of the Wichita Police Department saw Whiteker riding his bicycle eastbound on Skinner Street in Wichita. Whiteker was wearing all black, a backpack, and a dark colored hat with a white logo. As he approached the Skinner and Topeka Street intersection, he failed to stop and ran a stop sign. Due to this infraction, the officers tried to stop Whiteker. A chase began after Whiteker turned onto a side road and sped up. The officers lost sight of Whiteker during this chase. However, 10 minutes after the attempted stop, the officers apprehended him. The officers noticed that Whiteker no longer had his hat or backpack with him. They did locate a black backpack, hat, and Bluetooth speaker in a trash can close to where they had initially lost sight of Whiteker. The short 10-minute chase was captured on the officers' Axon body cameras, which is a small camera worn by an officer and provides video footage from their patrols.

Once apprehended, Whiteker was handcuffed and placed in the back of the officers' patrol car. Husen questioned Whiteker while Howard stood at the car's hatchback searching the backpack. Howard found two small bags of methamphetamine, a mirror with white residue, and another empty small bag in the backpack's top pouch. Howard also found a straw which he believed was used to load drugs into a drug pipe. Husen read Whiteker his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), pausing after each right to ask if Whiteker understood. Whiteker acknowledged each right and agreed to speak to Husen. Whiteker said that he discarded the backpack because it was heavy. During the interrogation, Whiteker admitted that he was a methamphetamine user and had used it that morning but claimed he did not put the drugs in the backpack. The State charged Whiteker with one count of possession of methamphetamine and one count of use or possession of drug paraphernalia.

The State moved for a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), which is a hearing to determine whether a defendant's statements, particularly a confession or an admission, may be admitted at trial. The State sought the admission of Whiteker's post-*Miranda* statements made to Husen after he was arrested and seated in the patrol car. At the hearing, the State presented evidence that Whiteker's statements to Husen were voluntary. Husen, testifying for the State, remarked how Whiteker appeared "pretty mellow," tired, and sweating from running. Husen also testified that he observed Whiteker slumped over during the interrogation and was aware that Whiteker had used meth earlier that day. Husen said that Whiteker's drug use gave him no concern about continuing the interrogation because Whiteker appeared to be "tracking along with the conversation" and gave no indication that he did not understand what was going on. Husen testified that Whiteker answered his questions coherently.

Whiteker testified on his own behalf at the hearing. He recalled that he was high at the time he spoke to Husen and he had used methamphetamine about 20 minutes before the officers encountered him. Whiteker, however, did not recall much of his statements and the interrogation.

The defense challenged the voluntariness of Whiteker's statements, asserting that his statements were not voluntary because of his mental state. The district court ruled that Whiteker's statements were voluntary, stating that there was no unlawfully coercive behavior and Whiteker's methamphetamine use did not render his statements involuntary.

In a pretrial motion, the State moved under K.S.A. 2021 Supp. 60-455 to admit Whiteker's statement about using methamphetamine the morning of his arrest to show intent, knowledge, or lack of mistake or accident regarding drug possession. The State argued that Whiteker offered an innocent explanation for his drug possession; he did not deny possession. The district court also granted this pretrial motion.

At Whiteker's jury trial, Howard and Husen testified to the events leading up to and after Whiteker's arrest and Whiteker's post-*Miranda* statements made following his arrest and during the interrogation. Lana Goodson, a forensic scientist at the Sedgwick County Regional Forensic Science Center, testified to her lab testing process and the lab results showing that the drugs were methamphetamine. The State's evidence included Axon video footage of the officers' attempted stop of Whiteker and photos of the backpack, hat, Whiteker's wallet and his identification card, bags of methamphetamine with the straw, the other small empty bag, and the mirror. Additionally, the State admitted Goodson's forensic drug-testing report that identified the substance to be methamphetamine. The jury found Whiteker guilty of methamphetamine possession and use or possession of paraphernalia.

At the sentencing hearing, the district court imposed a controlling term of 34 months in prison for the possession of methamphetamine conviction, imposed 6 months in jail for the use or possession of paraphernalia conviction, and ordered the two sentences to run concurrent to each other and consecutive to a suspended sentence in another case.

REVIEW OF WHITEKER'S TWO APPELLATE CHALLENGES

I.     *The District Court Did Not Err in Admitting Whiteker's Post-*Miranda *Statements*

Whiteker contends that his drug use and exhausted condition rendered his statements involuntary. He maintains that the totality of the circumstances show that the officers aimed to manipulate his condition to obtain incriminating statements. Whiteker also contends that the statements prejudiced him because the State heavily used the statements to prove that he had possession of the backpack and items within it. The State responds that substantial competent evidence supports the district court's finding that the

statements were voluntary under the totality of the circumstances. Moreover, if the district court erred, the error was harmless.

*We will review all factors in determining the voluntariness of Whiteker's statements.*

At the *Jackson v. Denno* hearing, after considering the testimonial evidence and viewing the Axon video footage of the interrogation, the district court found Whiteker's statements were voluntarily made. The district court did not detect unlawful, coercive behavior by the officers that would render Whiteker's statements involuntary. At trial, Whiteker made a standing objection to the admittance of his statements.

The State contends that Whiteker only contested his mental state during the *Jackson v. Denno* hearing and trial and thus improperly raises the other five factors for the first time on appeal. In support, the State cites to *State v. Johnson*, No. 107,086, 2013 WL 5303512, at *8 (Kan. App. 2013) (unpublished opinion), wherein another panel denied review of appellant's challenge of the admission of his post-*Miranda* statements because he did not raise the issue in district court. Whiteker responds that the district court had to review all factors to determine the voluntariness of Whiteker's statements whether or not he contested any factors, and thus review of all factors is necessary.

Notably, *State v. Lowery*, 308 Kan. 1183, 427 P.3d 865 (2018), also concerns a defendant's challenge of the voluntariness of his interrogation statements. There, after the district court ruled to admit Lowery's statements—which he asserted were involuntarily made—he sought appellate review. On appeal, Lowery added an argument that the detective did not provide him with a complete *Miranda* warning and, thus, his statements were involuntary. The Kansas Supreme Court noted that this argument was raised for the first time on appeal but considered this new argument regarding whether the defendant's

5

statements were involuntary. *Lowery*, 308 Kan. at 1219-22. Likewise, we will review all factors rather than limiting review to the first factor, namely Whiteker's mental state.

*The rules that we follow*

Our standard of review is as follows: The factual underpinnings of the district court's decision are reviewed under a substantial competent evidence standard, and the legal conclusion drawn from the facts is reviewed de novo. *State v. Parker*, 311 Kan. 255, 257, 459 P.3d 793 (2020). We cannot reweigh evidence, assess witness credibility, or resolve conflicting evidence. *State v. Gibson*, 299 Kan. 207, 216, 322 P.3d 389 (2014).

"'When a defendant claims his or her statement was not voluntary, the prosecution has the burden of proving by a preponderance of the evidence that it was voluntary.'" *Lowery*, 308 Kan. at 1218. The district court looks at the totality of the circumstances surrounding the statements to determine whether the statements were voluntarily, intelligently, and knowingly made by considering nonexclusive factors, including the defendant's mental condition; the manner and duration of the interrogation; the ability of the defendant to communicate on request with the outside world; the defendant's age, intellect, and background; the fairness of the officers when conducting the interrogation; and the defendant's fluency with the English language. *State v. Bentley*, 317 Kan. 222, 228-29, 526 P.3d 1060 (2023).

These factors, however, are not weighed against one another, "'with those favorable to a free and voluntary confession offsetting those tending to the contrary.'" *State v. Mattox*, 305 Kan. 1015, 1043, 390 P.3d 514 (2017). A confession may be found not to be free and a voluntary act if "'a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne.'" 305 Kan. at 1043.

6

*Whiteker challenges the voluntariness of his post-*Miranda *statements.*

Whiteker argues that his earlier drug use affected his mental condition, thus rendering his statements involuntary. In *State v. Walker*, 304 Kan. 441, 451, 372 P.3d 1147 (2016), our Supreme Court held that intoxication does not per se render a person's statements involuntary. To determine if the intoxication prevented a defendant from voluntarily making a statement, all circumstances must be examined. Courts must examine factors such as manifestations of being under the influence, whether others who interacted with the accused thought the accused seemed under the influence, the district court's evaluation based on observing or hearing the accused in a video or audio statement, the accused's familiarity with police interviews, and the accused's familiarity with *Miranda* rights. 304 Kan. at 451.

At the *Jackson v. Denno* hearing, Husen testified that Whiteker appeared to be "pretty mellow. He was tired from running, because he was sweating." To make Whiteker more comfortable, the officer turned on the air conditioning. During police questioning, Whiteker admitted to Husen that he had used methamphetamine earlier that day. Husen noticed that Whiteker was slumped over and leaning against the glass in the back seat with his eyes closed for much of the interrogation. Husen also testified that Whiteker was "very cooperative after he was taken into custody."

Whiteker also testified at the hearing. He confirmed that he had admitted to Husen that he had smoked methamphetamine. Specifically, he had smoked a couple of bowls of methamphetamine and was high during the interrogation. He estimated that 20 minutes passed between smoking and the officers' attempted stop.

Other evidence suggests that Whiteker was coherent during the interrogation. Husen asked Whiteker if he understood each *Miranda* right, to which Whiteker responded by either saying "yes" or nodding his head. Whiteker was able to sit himself

7

upright at various points of the interrogation. Whiteker appeared to give coherent answers and at various points looked up at Husen while answering questions. Husen also testified that it did not give him any cause for concern about continuing the interrogation after Whiteker informed him that he had smoked methamphetamine that day. Husen detected no signs of Whiteker having trouble following the conversation or failing to understand what was happening. He found that Whiteker coherently answered his questions. As to Whiteker's first factor, his mental state, his earlier methamphetamine use did not render his statements involuntary.

When we consider the additional factors in *Walker*—manifestations of intoxication, others' impressions of whether the defendant seemed intoxicated, the district court's conclusion from watching the interrogation, and the defendant's familiarity with police interviews and *Miranda* rights—being under the influence did not render Whiteker's statements involuntary. See 304 Kan. at 451. Whiteker appeared slumped over with his eyes closed and at times did not answer questions verbally. He also informed Husen that he had smoked methamphetamine that day. Husen believed that Whiteker understood the situation, was "tracking" with the conversation, and answered his questions coherently.

Kansas courts have routinely found statements voluntary in cases where officers perceived the defendant as answering questions coherently and understanding the situation. See *State v. Galloway*, 311 Kan. 238, 249-50, 459 P.3d 195 (2020). Statements were also found as voluntary even with conflicting evidence of the defendant's intoxication level and coherence. See *State v. Gilliland*, 294 Kan. 519, 530-32, 276 P.3d 165 (2012) (conflicting officer testimony on defendant's ability to walk and communicate clearly).

The second factor in determining whether Whiteker's statements were voluntary is the manner and duration of the interrogation. Here, the interrogation occurred while Whiteker was handcuffed in the back of the police car, which, according to Husen, lasted "maybe 15, 20 minutes at the most." Whiteker was questioned by only one officer, Husen, while Howard was nearby searching the backpack during the interrogation. In terms of comfort, Husen turned on the car's air conditioning to make Whiteker more comfortable, and he stopped questioning Whiteker once Whiteker said he was done with the interview.

Husen, without first asking Whiteker if the backpack found in the trash can was his, assumed it was Whiteker's and asked why Whiteker threw his "property" in the trash can. After Whiteker said he discarded the backpack because it was too heavy, Howard found a knife in the backpack, and Husen told Whiteker, "I don't think you're gonna ditch something unless you think something's in it." Husen later asked Whiteker whose backpack it was after telling Whiteker they found a crystal substance in the backpack. The second factor supports a finding that the statements were voluntary.

The third factor is the defendant's ability to communicate with the outside world. Whiteker did not ask to speak with anyone else during the interrogation. This factor and the fourth factor—the defendant's intellect, age, and background—also support a finding of voluntariness. Whiteker was 37 years old the day of his arrest. The district court recalled that it was familiar with Whiteker's background from prior cases. And Husen detected no inability by Whiteker to understand the situation.

The fifth factor is the fairness in conducting the interrogation. The district court found no unlawfully coercive behavior by Husen. At the start of the interrogation, Husen told Whiteker he would read Whiteker his rights and that if Whiteker wanted to talk, Husen appreciated it, and if Whiteker did not want to talk, that was his right. When

Whiteker asked for water, Husen told him that he would get him some, and the officers also provided Whiteker with a cigarette at his request.

The sixth factor, fluency in English, is not at issue here. There is no indication in the record that Whiteker had any difficulty speaking or understanding English.

We hold that Whiteker's statements were voluntarily made in consideration of the totality of circumstances. Whiteker's coherence in his answers to police, Husen's perception of Whiteker as understanding and communicating clearly, and the district court's conclusions upon reviewing the interrogation indicate a voluntary *Miranda* waiver. We conclude that the district court did not err in finding Whiteker's statements voluntary as the district court's findings of fact are supported by substantial competent evidence. The district court's reasons in support of its decision are substantial and compelling, and we affirm the district court's ruling.

II.     *The District Court's Failure to Include a Limiting Instruction Was Not Clearly Erroneous*

Whiteker contends that a limiting instruction on his statement admitting to using methamphetamine was both legally and factually appropriate under K.S.A. 2023 Supp. 60-455, thus establishing error. Whiteker maintains that the failure to give the limiting instruction was clear error warranting reversal, contending that there was a "real possibility" that the jury improperly used the statement considering that all charges against Whiteker were drug charges. Whiteker, however, did not request a limiting instruction at trial.

In our analysis of this jury instruction issue, we follow a three-step process. First, we determine whether we can or should review the issue. In other words, "'whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal.'" *State v.*

10

*Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). Second, we consider the merits of the claim to determine whether error occurred below. At this step, we consider whether the instruction was "legally and factually appropriate, using an unlimited standard of review of the entire record." 313 Kan. at 254. And third, we assess whether the error requires reversal. That is, "'whether the error can be deemed harmless.'" 313 Kan. at 253.

When a party asserts a jury instruction error for the first time on appeal, "the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous." *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018); see K.S.A. 22-3414(3). "Instructional error is clearly erroneous when "'the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'"" *State v. Owens*, 314 Kan. 210, 235, 496 P.3d 902 (2021). The "'clearly erroneous'" principle is not a standard of review; "[r]ather, it supplies a basis for determining if an error requires reversal [of a conviction]." *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

*Whiteker's prior statements were admitted into trial without a limiting instruction.*

K.S.A. 2023 Supp. 60-455(b) allows evidence that a person committed prior bad acts when used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." When a trial court admits evidence under K.S.A. 2023 Supp. 60-455, the court should provide the jury with a limiting instruction. *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006). "[A] limiting instruction is both legally and factually appropriate if any 60-455 evidence is presented at trial." *State v. Molina*, 299 Kan. 651, 656, 325 P.3d 1142 (2014).

In response, the State agrees that a limiting instruction was both legally and factually appropriate and the district court erred by not giving the instruction. This error, the State contends, does not warrant reversal, maintaining that the record establishes that

11

the same verdict would have resulted without the instructional error. The State further argues that a limiting instruction would have confused the jury, considering another jury instruction allowed the jurors to consider Whiteker's drug use in deciding whether Whiteker had nonexclusive possession of the items.

Having established that this is a reviewable claim and that an instructional error occurred, we turn to the third step to determine whether this error was clearly erroneous. Here, the jury saw the body camera video of Whiteker's interrogation with Husen where Whiteker admitted to using methamphetamine earlier that day. Husen also testified that he asked Whiteker if he used meth and that Whiteker admitted that he used it and smoked it that day. Jury instruction No. 3, which instructed the jury on the possession of methamphetamine charge, stated that in deciding whether Whiteker knowingly possessed methamphetamine, the jury could consider, among other factors, whether he used controlled substances.

The record indicates that aside from Whiteker's admission of using methamphetamine, other evidence similarly indicated that Whiteker knowingly possessed methamphetamine. Howard testified that the zipper to the backpack's top pouch was unzipped before he began searching and he could see a small bag containing a crystal substance inside it. Howard also found another bag with a crystal substance and a mirror with white residue in that same pouch. Howard further testified that the cigarettes Whiteker had asked for were also in that same pouch. Finally, Whiteker's wallet and identification card were found in the backpack's side pouch. Thus, the record indicates that while the district court committed instructional error by failing to give a limiting instruction regarding Whiteker's drug use, there is no clear error. We are not firmly convinced that the jury would have returned a different verdict had the error not occurred.

To conclude, we disagree with Whiteker's argument that his statements were involuntary, and we find the district court did not err in admitting his statements. We also find the district court's failure to provide a limiting instruction was not clearly erroneous. Therefore, we affirm Whiteker's convictions and sentences.

Affirmed.